FRAMINGHAM WATER COMPANY *vs.* OLD COLONY RAILROAD COMPANY.

OLD COLONY RAILROAD COMPANY *vs.* FRAMINGHAM WATER COMPANY.

Suffolk.    January 17, 1900. — June 21, 1900.

Present: MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Eminent Domain — Rights of Water Company and Railroad in Waters of Pond and River — Specific Performance — Injunction.*

The Framingham Water Company has no right under the St. of 1884, c. 271, incorporating it, and by the taking, as against the Old Colony Railroad Company, to all the waters of Farm Pond and Sudbury River within certain limits and to determine the question of necessity, but only has the right to so much of them as is necessary for the purposes specified in § 1 of the statute.

The Old Colony Railroad Company has the right to pump water from Farm Pond for the necessary use of its railroad, so far as that use does not interfere with the use of the same by the Framingham Water Company for supplying the town of Framingham with water under the St. of 1884, c. 271.   Whether that company would have the right to use the water so as to interfere with the corporate purposes of the railroad company, *quære.*

Two bills in equity were brought, one by a water company against a railroad company for an injunction to restrain it from using any of the waters of a certain pond, and the other by the railroad company against the water company to compel it to specifically perform its agreement as to supplying the railroad company with water from the pond. In the first case this court decided that the railroad company had the right to pump water from the pond for its own use. In the second case the railroad company did not contend that if it had the right so to pump water it could maintain the bill for specific performance. *Held*, that there was no occasion, by the admission of the railroad company, to consider the matter of specific performance further.

Two bills in equity were brought, one by a water company against a railroad company for an injunction to restrain it from using any of the waters of a certain pond, and the other by the railroad company against the water company to compel it to specifically perform its agreement as to supplying the railroad company with water from the pond, and to restrain it from prosecuting two actions at law already brought against the railroad company, one to recover for all the water which the water company had furnished the railroad company from its pumping station, and the other alleging that the railroad company had taken water from the pond without its consent, claiming damages. *Held*, at the trial of the second bill in equity, that as to the two actions at law, the first depended upon whether the contract was made, and this could more properly be determined in the first action; that the second action at law would seem to be governed by what this court had decided in the first bill in equity as to the right of the railroad company to pump water from the pond for the necessary use of its railroad, and that an injunction should not issue to restrain the further prosecution of that action, if the water company should see fit to continue to go on with it.

THE FIRST CASE is a bill in equity by a water company, organized by the St. of 1884, c. 271, against a railroad company. The bill alleges that the plaintiff, by virtue of the authority given it by the St. of 1884, took, in the year 1885, in the manner prescribed in the act, the waters of Farm Pond, and the waters of so much of the Sudbury River in the town of Framingham as lie above the dam built across the river by the city of Boston in 1872, below the bridge on which the defendant's railroad crosses the river, and the waters flowing into Farm Pond and the Sudbury River above the dam, for its purposes as a water company, and has since been using the same for said purposes. The bill then charges the using and continuing to use by the defendant of the water of Farm Pond, without the consent of the plaintiff, to its great injury. The prayer of the bill is for an injunction to restrain the defendant from using any of the waters of Farm Pond and Sudbury River.

THE SECOND CASE is a bill in equity, filed February 3, 1892, alleging that in the spring of 1885 the defendant asked permission of the plaintiff to build a pumping station upon the land

of the plaintiff on Farm Pond, and agreed that if the plaintiff would do so it would pump and furnish to the plaintiff water at said station for the use of its engines and other necessary railroad purposes to the amount of 40,000 gallons a day, or so much thereof as might be necessary for said purposes from time to time; and, in consideration of such agreement, the plaintiff permitted the defendant to erect a pumping station upon its land; that the pumping station was erected and put in operation on July 4, 1885, and thereafter until August, 1887, the defendant performed its agreement, and has since refused to perform the same.

The bill further alleges that on December 14, 1891, the defendant brought an action in the Superior Court against the plaintiff to recover for all the water which it had furnished the plaintiff from said pumping station; and that on the same day the defendant brought an action in the same court alleging that the plaintiff had taken water from Farm Pond, without its consent, claiming treble damages therefor under its charter.

The bill further alleges that the failure of the defendant to furnish water would cause irreparable injury to the plaintiff, which was not capable of being compensated by money damages.

The material prayers of the bill are that the defendant be ordered specifically to perform its agreement; and that the defendant be restrained by injunction from prosecuting the actions already brought, or from prosecuting other actions.

The two cases were sent to a master, who made a report, and were afterwards heard by *Hammond*, J., who reserved them for the consideration of the full court. The facts appear in the opinion.

*R. M. Morse*, (*S. A. Phillips* with him,) for the Framingham Water Company.

*J. H. Benton, Jr.*, for the railroad company.

LATHROP, J. Before proceeding to consider the St. of 1884, c. 271, and the taking under it, it is necessary to consider previous legislation on the subject.

By the St. of 1872, c. 177, the city of Boston was authorized to take the waters of Sudbury River and Farm Pond, with certain provisions not material to these cases, except that § 4 pro-

vided that nothing contained in the act should be so construed as "to prevent the inhabitants of the towns of Framingham," and certain other towns named, " from taking from the Sudbury or Assabet Rivers or Farm Pond so much of the water hereby granted as shall be necessary for extinguishing fires, and for all ordinary domestic and household purposes, and for the generation of steam, or from cutting and carrying away ice from said pond; or as to prevent the Boston and Albany Railroad Company, or the Mansfield and Framingham Railroad Company, or the Boston, Clinton, and Fitchburg Railroad Company from taking water from Farm Pond, for use in locomotive or other engines, or for other railroad purposes, under such regulations of the city council of the city of Boston as may be essential for the preservation of the purity of the same." The city of Boston exercised the rights conferred upon it by this act, and the defendant in the first case is the successor of the rights and title of the Mansfield and Framingham Railroad Company and of the Boston, Clinton, and Fitchburg Railroad Company.

By the St. of 1881, c. 206, § 1, the town of Framingham was " authorized to supply itself and its inhabitants with pure water to extinguish fires, generate steam, and for domestic and other uses; to establish fountains and hydrants; to regulate their use, and relocate or discontinue the same, and to fix and collect rents for the use of said water." Section 2 provides: " Said town may take and hold of the waters of Farm Pond and Sudbury River in said Framingham, and the waters flowing into said Farm Pond and Sudbury River, so much as may be necessary for the purposes specified in section one of this act." By § 9, the act was to take effect upon its passage; but no expenditure was to be made, or liability incurred, except for preliminary surveys and estimates, unless the act should be accepted by a vote of two thirds of the legal voters of the town present and voting thereon at a legal meeting called for that purpose within three years from the passage of the act. We presume that this act was not accepted, for the master has found: " Under this law no action was taken by the town, except to convey all its rights under said chapter to the Framingham Water Company." This language seems to be inaccurate, for the conveyance was not authorized by the St. of 1881, but by the St. of 1884, c. 271,

§ 12, which incorporated the Framingham Water Company, the plaintiff in this suit.

By § 1 of this act certain persons named were made a corporation " for the purpose of furnishing the town of Framingham and its inhabitants with pure water to extinguish fires, generate steam, and for domestic and other purposes." Section 2 of this act provides : " Said corporation shall have all the rights which belong to the town of Framingham and the inhabitants thereof, or which have been granted to, or have been reserved by and to, the said town and inhabitants, to take, use and hold of the waters of Farm Pond and Sudbury River in said Framingham, and the waters flowing into said Farm Pond and Sudbury River, so much as may be necessary for the purposes specified in section one of this act." Power is also given by this section to take " all necessary lands for raising, diverting, flowing and holding said waters, and securing and preserving the purity of the same." By § 5, the capital stock shall not exceed $250,000.

Assuming to act under this statute, the plaintiff, by an instrument dated June 30, 1885, and recorded August 14 of the same year, took " for the sole use and benefit of the said Framingham Water Company all the waters of Farm Pond . . . and the waters of so much of Sudbury River in the said town of Framingham as lies above the dam built across said river by the city of Boston in 1872, below the bridge by which the Old Colony Railroad crosses said river, and the waters flowing into said Farm Pond and said Sudbury River above said dam."

The defendant had no actual notice of the taking until July, 1887.

The master has found many facts showing the condition of affairs at the time the various acts referred to were passed, and subsequently. So far as material they may be briefly stated as follows: Farm Pond is a great pond of 193 acres, and the defendant is a riparian owner on the pond. The defendant, as such owner, has always supplied itself, or been supplied, with water from the pond. If not absolutely necessary, it is in the highest degree important that the defendant should receive at or near there a very large daily supply of water for its engines and for the operation of its road. In 1887, the defendant built a pumping station on its own land, and pumped water for its

own use from Farm Pond, estimated at 50,000 gallons daily. The minimum daily supply of water from Farm Pond alone is between 500,000 and 600,000 gallons. The minimum daily supply from Sudbury River in Framingham and above the dam, which is below the railroad crossing, is 4,100,000 gallons, making 4,700,000 gallons daily from these two sources, and this would be adequate to supply a population of 47,000. The population of Framingham, by the census of 1890, was 9,239. The minimum daily supply of that part of Sudbury River within the town of Framingham and below the aforesaid dam is 6,000,000 gallons, thus making the total daily minimum supply of water within the town of Framingham of Farm Pond and Sudbury River, and waters flowing into them, to be 10,700,000 gallons, and this would be adequate to supply 100,000 people. The water furnished to and taken by the railroad company has not, in fact, up to 1896, interfered with or impeded the supply of water necessary for the purposes of the water company specified in the St. of 1884, c. 271, § 1.

The contention of the plaintiff in the first case is that by virtue of the statute incorporating it, and by the taking, it has the right as against the defendant to all the waters of Farm Pond and Sudbury River, within certain limits ; that it alone has the right to determine the question of necessity; and that as the trespass is continuous, an injunction should issue restraining the defendant from taking any of the waters included in the taking by the plaintiff.

We are not able to accede to the proposition that the plaintiff has, by virtue of the act incorporating it, any such right as it claims. The act itself purports to give no such power. The purposes of the act were " for the purposes of furnishing the town of Framingham and its inhabitants with pure water to extinguish fires, generate steam, and for domestic and other purposes." St. 1884, c. 271, § 1. Section 2 does not give the right to take the waters of Farm Pond and Sudbury River, and the waters flowing into the same, but to take " of " these waters " so much as may be necessary for the purposes specified . . . in this act." The difference between the two is very great ; and the reason of the difference is manifest when we consider the previous legislation which we have already referred to. When

the grant was made to Boston by the St. of 1872, it was of "all the water of Sudbury River," and "the water of Farm Pond, . . . and the waters which may flow into and from said river and pond." At the same time, as we have seen, the rights of Framingham and other towns to take water for domestic purposes were preserved, as were the rights of the railroad companies to take water from Farm Pond, for use in locomotives or other engines, or for other railroad purposes. When, therefore, the right was given to the town of Framingham, and, when it did not accept the act, to the water company, to take of the waters so much as was necessary for specified purposes, it would do great violence to the language used to say that power was given to the water company to take all of the waters.

The view which we take of the language of the act is supported by all the attendant circumstances. The minimum daily supply of water within the town of Framingham of Farm Pond and Sudbury River and waters flowing into them is found to be 10,700,000 gallons, which would be adequate to supply 100,000 people. According to the State census of 1885, Framingham had a population of 8,275, and the master has found that by the census of 1890 the population was 9,239. If the plaintiff's contention is correct, it could take all these waters for the small town of Framingham, cut off an important water supply of the city of Boston and of the various railroad companies bordering on the pond, and compel them to buy water of the plaintiff, a corporation with a capital stock not to exceed $250,000, and with authority to issue bonds to an amount equal to the capital stock actually paid in. Supposing the whole amount to be $500,000, what provision would this be for building the works, laying the pipes, and paying damages to the city of Boston and the railroad companies?

The plaintiff had a more modest view of its powers under the St. of 1884, when on October 30, 1885, it entered into a contract with the city of Boston, by which the city agreed to allow the plaintiff to take of the waters of Farm Pond and Sudbury River, and the tributaries of both, so much as may be needed for its purposes in accordance with the St. of 1884, c. 271, and the water company agreed to pay the city on the first day of January of each year, for the annual daily average quantity of

water taken by the company during the preceding year, at the rate of $700 per million gallons. The contract further provided: " Whenever the annual daily quantity of water taken by said water company shall exceed one million gallons, the said water company shall pay the said city for such average excess at the rate of $2,500 per million gallons in addition to the payment above provided for." The contract was to be terminable by either party upon written notice to the other of one year.

This contract was made soon after the taking, and the water company appears as a buyer of water and not as a seller. By its conduct it admits that its rights are subordinate to those of the city.

The finding of the master, that " the water furnished to and taken by the railroad company has not in fact, up to 1896, interfered with or impeded the supply of water necessary for the purposes of the water company specified in the St. of 1884, c. 271, § 1," can only be met by the contention that the water company was the sole judge of the necessity. But this position is untenable. If a corporation is given the right to take either land or water by the right of eminent domain, it can take only what is reasonably necessary for the purpose. It does not usually acquire the fee, but only such easement as is necessary for the purposes for which it is permitted to take it. *Harback* v. *Boston*, 10 Cush. 295. *Attorney General* v. *Jamaica Pond Aqueduct*, 133 Mass. 361, 365. *Bishop* v. *North Adams Fire District*, 167 Mass. 364. *Rockport* v. *Webster*, 174 Mass. 385. See also *In re St. Paul & Northern Pacific Railway*, 34 Minn. 227 ; *Tracy* v. *Elizabethtown, Lexington, & Big Sandy Railroad*, 80 Ky. 259 ; *State* v. *Morris Aqueduct*, 17 Vroom, 495 ; *Rensselaer & Saratoga Railroad* v. *Davis*, 43 N. Y. 137 ; *Spring Valley Water Works* v. *San Mateo Water Works*, 64 Cal. 123.

On the whole case we are of opinion that the defendant has the right to use the water of the pond for the necessary use of its railroad, so far as that use does not interfere with the use of the same by the water company for supplying the town of Framingham with pure water ; and that such use by the defendant does not interfere with the plaintiff's right to use the water for the purposes stated in its charter. Whether the defendant would have the right to use the water so as to interfere with the

corporate purposes of the plaintiff, it is unnecessary now to consider.

In the first case the order must be            · *Bill dismissed.*

In the second case, it appears from the report of the master that in April, 1885, before any water rights or land had been taken by the water company under the statute, the water company began the construction of a pumping station upon a piece of land belonging to the railroad company, and located between the pond and the railroad tracks. This station was begun in April, 1885, and completed July 4, 1885. Before the work was begun, there was a conference between the engineer of the water company and the general manager of the railroad company, and it was understood by the latter that the water company was to furnish 40,000 gallons a day for the privilege of building the pumping station on the railroad company's land. On August 14, 1885, the water company took the land by the right of eminent domain, and this taking was held to be valid in *Old Colony Railroad* v. *Framingham Water Co.* 153 Mass. 561. The master found that there was no completed contract that 40,000 gallons a day should be furnished without charge, and reported all the evidence bearing upon this question.

We do not find it necessary to consider this question, as the railroad company does not contend that if it has the right to pump water for its use from the pond it can maintain this bill against the water company to enforce specific performance of the contract by the water company to furnish water. As we have decided in the first case that the railroad company has the right to pump water from the pond for its own use, there is no occasion, by the admission of the plaintiff, to consider the matter of specific performance further.

As to the two actions at law, the first depends upon whether the contract was made, and this can more properly be determined in the first action. The second action at law would seem to be governed by what we have decided in the first case. We do not think, however, that an injunction should issue to restrain the further prosecution of that action, if the water company should see fit to continue to go on with it. Standing alone, no ground for equitable relief is shown.

                                                    *Bill dismissed.*