INHABITANTS OF WALPOLE *vs.* MASSACHUSETTS CHEMICAL COMPANY.

Norfolk. March 16, 1906. — May 17, 1906.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Easement. Water Rights. Waterworks. Municipal Corporations. Walpole. Mills and Mill Privileges.*

Under St. 1893, c. 277, authorizing the town of Walpole, for the purpose of supplying itself and its inhabitants with water, to take and hold certain waters and the water rights and water sources connected therewith, and also all lands and easements necessary for holding and preserving such water, a taking of an entire parcel of land for the purposes named in the statute, describing it by metes and bounds and as if it were unincumbered, includes the taking from a riparian owner on a stream below of an easement to flow the land in connection with a dam on that stream, and it is immaterial that no personal notice of the taking was given to the owner of the easement if notice was given by recording the taking in the registry of deeds in accordance with the terms of the statute.

Whether a town by a taking of land for the purpose of supplying its inhabitants with water, under a statute authorizing it to take and hold certain waters and the water rights connected therewith and all lands and easements necessary for holding and preserving such water, would deprive a riparian proprietor on the stream below of his right to build a dam under the mill act and set back water on the land above by paying damages to the owner, was not decided in this case because the question was not raised.

BILL IN EQUITY, filed October 17, 1900, to restrain the defendant from flowing two parcels of land taken by the plaintiff under St. 1893, c. 277, by a taking recorded in the registry of deeds in accordance with the provisions of that statute, on which the plaintiff had driven wells and established a pumping station with its necessary equipment used in supplying itself and its inhabitants with water.

In the Superior Court the case came on to be heard before *Schofield,* J. upon the report of a special master and exceptions thereto.   At the request of the counsel on both sides the judge without making any ruling or decision reserved the case and all questions of law therein under R. L. c. 159, § 29, for determination by this court, and reported it for such determination upon the pleadings, the report of the special master and the exceptions thereto, such decree to be entered and such orders to be made as justice and equity might require.

The first three sections of St. 1893, c. 277, are as follows:

"Section 1.   The town of Walpole may supply itself and its inhabitants with water for the extinguishment of fires and for domestic and other purposes; may establish fountains and hydrants, relocate or discontinue the same, and may regulate the use of such water and fix and collect rates to be paid for the use of the same.

"Section 2.   The said town, for the purposes aforesaid, may take, by purchase or otherwise, and hold waters from the valley of the Neponset River and its tributaries, from Spring Brook, so-called, Mill Brook, so-called, and Traphole Brook, or the waters of any other brook, or any springs, artesian or driven wells or filter galleries, within the limits of said town of Walpole, and the water rights and water sources connected therewith; and also all lands, rights of way and easements necessary for holding and preserving such water and for conveying the same to any part of said town of Walpole; and may erect on the land thus taken or held proper dams, buildings, fixtures and other structures, and may make excavations, procure and operate machinery, and provide such other means and appliances as may be necessary for the establishment and maintenance of complete and effective water works; and may construct and lay down conduits, pipes and other works, under or over any lands, water courses, railroads or public or private ways, and along any such way in such manner as not unnecessarily to obstruct the same; and for the purpose of constructing, maintaining and repairing such conduits, pipes and other works, and for all proper purposes of this act, said town may dig up any such lands, and, under the direction of the board of selectmen of the town in which any such ways are situated, may enter upon and dig up any such

ways in such manner as to cause the least hindrance to public travel thereon.

"Section 3. Said town shall, within sixty days after the taking of any lands, rights of way, water rights, water sources or easements as aforesaid, otherwise than by purchase, file and cause to be recorded in the registry of deeds for the county and district in which the same are situated, a description thereof sufficiently accurate for identification, with a statement of the purpose for which the same were taken, signed by the water commissioners hereinafter provided for."

C. K. Cobb, for the plaintiff.

J. E. Cotter & C. F. Jenney, for the defendant.

KNOWLTON, C. J.   This is a bill in equity to restrain the defendant from flowing the land occupied by the plaintiff as a part of its system for supplying water to its inhabitants.   This land was taken by the town under St. 1893, c. 277, and the defence relied upon is that the defendant has an easement in the land, namely, a right to flow the land in connection with a dam on the stream below, which right has been owned by it and its predecessors in title since 1659, when it was granted by the town of Dedham.   The plaintiff denies that the defendant or its predecessors in title have owned such a right in recent years, and contends that, if they owned it, it was included in the plaintiff's taking under the statute, and was thereby extinguished.

The master in his report says that the defendant rests its right upon three grounds: first, an ancient grant from the town of Dedham in 1659 ; second, a so called covenant or agreement made in 1724 between the then owners of the mill privilege and the owners of the meadows above it; and third, a right by prescription or adverse use.   The case was heard at length, and many questions of law and of fact arose before the master. Numerous exceptions to the master's report were taken by both parties.   The master found that the defendant has a right of flowage over the land in the winter season, and, at the hearing before the judge, the case was reserved for the full court upon the pleadings, the master's report and the exceptions thereto.

The master ruled that the plaintiff's taking did not include the easement claimed by the defendant, and the plaintiff's first

exception is to this ruling. It is conceded by the defendant that the statute is broad enough to enable the town to take such a right, and the ruling seems to have been made on the ground that the defendant's easement was a water right, and that the language of the instrument of taking does not include such a right. The instrument does not purport to take any right to the water of the stream. After appropriate recitals, it purports to take two lots of land, which are particularly described by metes and bounds, and it declares that "the taking of the land embraced in this description is for the use of constructing, laying down, maintaining and repairing conduits, pipes and drains for the taking, holding and conveying of water in, under and over the same towards and into different parts of said town of Walpole for distribution and use therein, and for the use and purposes of a site for buildings and structures which may be erected thereon, and for the sinking of filter wells and driven wells and for the holding and preserving of such water, and for the use and purpose of passing to and from said buildings or structures, and of laying down, maintaining and repairing conduits, pipes and drains to and from the same, as all the same may be necessary or convenient in constructing, maintaining and operating a system of water works for said town of Walpole under the provisions of said act."

This is a taking of the entire title to the land, so far as necessary for the purposes set forth, and is within the authority of the statute. If the ownership of the land had been divided, so that certain interests were owned by one party and other interests by another party, it would have included them all, at least so far as they were needed for the uses to which the land was to be put, just as it would if they had all been owned by one person. The easement now claimed by the defendant was one that could not be left outstanding, consistently with the proper exercise of the plaintiff's rights in the land. This easement, if it continued valid, would enable the defendant to flow the land on which the plaintiff's pumping station is erected, and thereby to interfere with the use of the building and the system of pumps and driven wells by which the plaintiff obtains water. It is as if the easement were a right of way over the land where the pumping station is erected. Such a right, annexed to a neighboring

estate, would be taken by a taking of the whole of the servient tenement for such a public use. An easement is an interest in the land, carved out of it for the benefit of the owner of the dominant tenement, and it leaves the owner of the servient tenement with a title limited by the ownership of this separate interest in another person. So a taking of the entire land, which describes it as if it were unincumbered, includes the easement, just as it would include a leasehold estate, as well as the fee 'or reversion. *Commonwealth* v. *Fisher*, 6 Met. 433. *Sprague* v. *Dorr*, 185 Mass. 10, 13. It is immaterial that no personal notice of the taking was given to the owner of the easement. The notice by the public acts of the town and its officers and the registration required by the statute are enough to vest a good title in the town. *Appleton* v. *Newton*, 178 Mass. 276. *Sweet* v. *Boston*, 186 Mass. 79.

The case is entirely different from one in which the right claimed to be taken is outside of the land in the waters of the stream as it flows to riparian proprietors below. The ruling that the defendant's right of flowage, existing as an easement in the land before the taking, remained unaffected by the taking was erroneous.

This view of the case makes it unnecessary to consider the many questions raised by the other exceptions, which relate to the defendant's title to the easement.

It is also unnecessary to consider whether a taking of land under this statute would deprive a riparian proprietor on the stream below of his right to build a dam under the mill act, and set back the water upon the land above, by paying damages to the owner. No such question was raised at the hearing.

*Decree for the plaintiff.*