FEDERAL INSURANCE COMPANY *vs.* WILLIAM H. GILMOUR & another.

Suffolk.    March 10, 1910. — June 8, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Contract*, Construction.   *Agency*, Insurance agent.   *Evidence*, Extrinsic affecting writings.   *Words*, "Predicated on the yearly profits," "Reinsurances," "Reserve."

A fire insurance company made with an agent a contract which, with regard to the agent's compensation, provided that, in addition to certain stipulated commissions, the agent should receive "a contingent commission of ten per cent . . . predicated on the yearly profits of the agency, computed in the following form, — the first computation to be as of September 1, 1904, *i. e.* — The first year you will be credited with the gross amount of premiums written, less cancellations, reinsurances and returns of every nature on the one hand, and debited with commissions, postage and other incidental agency charges, . . . losses incurred during the year and 40% reserve on the net premiums written during the current year, and upon the profit balance, if any, thus shown the contingent commission will be predicated." The contract contained no provision for its termination. The company terminated it on February 15, 1907, by a notification to the agent and reinsured all its risks in other companies, and, the parties not being able to agree upon an adjustment of their accounts, brought a suit in equity for an accounting, at the hearing of which evidence was introduced tending to show that the word "reinsurances" as used in dealings between fire insurance companies and their agents had a technical meaning and excluded

reinsurances by the home office, and that in their accounts of the previous years the parties had so confined its meaning and also had adopted, as the meaning of the word "reserve," an approximation of the actual cost to the company of carrying the insurance written by the agent during a certain period. *Held,* that the words in the contract, "predicated on the yearly profits," did not indicate an intention that the agent should receive no "contingent commission" if the contract were terminated between the annual dates, but that the agent was entitled to a "contingent commission" calculated on the basis indicated in the contract as applied to the portion of the year between August 31, 1906, and February 15, 1907 ; that the evidence as to the meaning of the words "reinsurances" and "reserve" was admissible as solving any doubt that existed with regard thereto, and that the expense to which the company was put in reinsuring the risks originally insured through the agent should not be considered in reaching the basis for the calculation of the "contingent commission."

BILL IN EQUITY, begun as an action of contract by writ dated September 28, 1908, and amended into a suit in equity in the Superior Court for an accounting, as stated in the opinion.

The case was referred to John Noble, Esquire, as master, and thereafter was reserved by *Richardson,* J., upon the pleadings, the master's report and exceptions of the plaintiff thereto, for determination by this court.

*R. Homans,* (*A. G. Gill* with him,) for the plaintiff.

*F. W. Brown,* for the defendants.

RUGG, J. This is a suit in equity for an accounting between a fire insurance company and its agents. The material facts are that the defendants were constituted the agents of the plaintiff by a contract dated September 3, 1903, which set out the terms under which the business was to be done. It contained no express provision as to termination, and both parties assumed that the relation would be of long duration. On February 15, 1907, the plaintiff telegraphed the defendants in substance that it had reinsured its fire risks and discontinued that branch of its business. The controversy arises as to the contingent commission, which may be due under this clause of the agency contract, to wit:

"In addition to the above rates of Commission, a contingent commission of 10% will be allowed you, predicated on the yearly profits of the Agency, computed in the following form, — the first computation to be as of September 1, 1904, *i. e.* —

"The first year you will be credited with the gross amount of premiums written, less cancellations, reinsurances and returns of every nature on the one hand, and debited with commissions,

postage and other incidental Agency charges, local board and Fire Patrol assessments, Local Taxes, if any, losses incurred during the year and 40% reserve on the net premiums written during the current year, and upon the profit balance, if any, thus shown the contingent commission will be predicated. The same method of computation will apply the second year, and thereafter, with the exception that beginning with the second year the Reserve that has been debited the previous year will be brought down as a credit and you in like manner debited with a 40% Reserve on the premiums of the current year."

It is to be observed that this language does not specifically refer to the state of affairs which has arisen. It must be assumed, however, that an ending at some time of the relationship created by the contract was impliedly contemplated. It would inevitably occur by the efflux of time through the death of one or both of the defendants. The language of the clause is general. Its purpose is to make a part of the compensation of the defendants commensurate with the energy, industry and perseverance with which they should prosecute their work as agents. This purpose is applicable to the relation of the parties, whenever the agency may cease. The words, "predicated on the yearly profits" do not indicate an intention that no such profits should be ascertained in the event of a termination of the agency between the annual dates fixed in the contract, but rather describe a term of calculation which is to be used year by year, so long as the contract is in force, and for any fraction of a year remaining unadjusted when the relation of principal and agent ceases. See *Doe* v. *Grafton*, 18 Q. B. 496, 501. The date was apparently adopted for convenience, and was not coterminous with the calendar year of the agency. Hence the terms of payment established by the contract are to be applied to the situation of the parties as it is found to be on February 15, 1907, and their rights and liabilities are to be determined as of that date.

The plaintiff urges that the word "reinsurances" in the contract means that in making up the items of the account upon which the contingent commission is to be computed, the actual cost to it of reinsuring its risks should be charged against the gross premiums. Evidence was received to show that the word "reinsurance" as used in dealings between fire insurance com-

panies and their agents has a technical meaning of agency reinsurance and excludes home office reinsurance. If there was any doubt about its sense, this evidence was competent. *Jennings* v. *Puffer*, 203 Mass. 534. *Way* v. *Greer*, 196 Mass. 237. *Smith* v. *Vose & Sons Piano Co.* 194 Mass. 193. Its significance had been so confined in all the previous accountings between the parties. Although risks written by the defendants had occasionally been reinsured through the plaintiff's home office, this expense had never been charged against the profits of the defendants' agency. Its context in the contract indicates that the word was intended to be confined to reinsurances effected at the agency of the defendants, and did not include a total reinsurance of all risks by the home office, made without the knowledge or consent of the defendants.

The contract must be the only guide for ascertaining the rights of the parties. We cannot speculate as to what they might have agreed had the event which has now come to pass been before them when its terms were settled, nor undertake to make what may now seem an equitable adjustment of their conflicting claims. The rule which the parties have themselves adopted must be used to measure their obligations. According to that rule the contingent commission is to be computed, whenever the occasion arises for ascertaining it, by putting upon the credit side of the account the gross amount of premiums received for the period under consideration, (less cancellations, agency reinsurances and other returns,) and the forty per cent reserve which had been used as a debit item at the last previous accounting, and charging against it on the debit side, expenses, losses and a forty per cent reserve on the net premiums of the period under consideration. Upon whatever balance of profit is thus shown the contingent commission is to be computed.

The master has found that the word "reserve," employed to describe the item of forty per cent on the net premiums in making up the account, although used in the insurance business to designate a fund set aside for reinsurance of outstanding risks, if necessary, is not limited to this meaning but includes also funds to pay losses or other expenses of the business. In whichever sense it may have been used in this contract, the result is the same. Forty per cent on the net premiums of any

period appears to have been adopted by the parties as an approximation of the actual cost to the plaintiff of carrying the insurance written by the defendants for that period. It was credited to them when a new account was made up because the real losses for the period just ended on risks previously written had been then ascertained. While not an exactly accurate means of ascertaining the net profit of the business of the agency, it is one which can be applied at any time without waiting for the policies to expire in order to determine the net profit with accuracy. But whether accurate or not, it is the rule made by the parties, and it is not unconscionable. There is no occasion for the court to try to take better care of the rights of the parties than they have provided by their written agreement.

On the report of the master under this rule the balance due the plaintiff is $219.48.*   Let a decree be entered accordingly.

*So ordered.*

---

* This sum was arrived at by the following computation, based upon findings of the master:

Gilmour & Coolidge

to

Federal Insurance Company, Dr. —

| | | |
|---|---:|---:|
| To balance on hand Feb. 14, 1907 | | $1,190.90 |
| Cr. | | |
| By Contingent Commission as figured in summary | | |
| below, Sept. 1906 to Feb. 14, 1907, | 904.37 | |
| Additional commission omitted from 1906 acct., — | 67.05 | 971.42 |
| Debit balance, | | 219.48 |

*Summary.*

| | | |
|---|---:|---:|
| Reserve Aug. 31, 1906 (40% of the preceding year) | 7,018.68 | |
| Net premiums, | 8,306.83 | 15,325.51 |
| | | |
| Less expenses, | $2,336.63 | |
| Losses incurred, | 622.40 | |
| Reserve (40% of net premiums Aug. 31/06 to | | |
| Feb. 14/07 (see item above), | 3,322.73 | 6,281.76 |
| To balance, being net profit Aug. 31/06 to Feb. 14/07 | | 9,043.75 |

Contingent commission = 10% of $9,043.75 = $904.37.