SELECTMEN OF NATICK *vs.* BOSTON AND ALBANY RAILROAD COMPANY & others.

Suffolk. March 17, 1911. — November 6, 1911.

Present: RUGG, C. J., MORTON, HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Railroad,* Abolition of grade crossings, Duty as to repairing bridges. *Statute,* Construction. *Municipal Corporations.* *Words,* "Framework," "Surface."

In a suit in equity by the selectmen of a town against a railroad corporation, to compel the defendant to repair the under floor of a certain bridge over the tracks of the defendant, constructed under an order of commissioners appointed in proceedings for the abolition of a grade crossing, on the ground that the under floor was a part of the "framework" of such bridge and not a part of its "surface" within the meaning of those terms as used in St. 1906, c. 463, Part I. § 38, where the plaintiffs excepted to the admission in evidence of expert testimony as to the meaning of the terms "framework" and "surface" of a bridge, but the judge in making his decision, which was set forth in a memorandum, did not make a finding of fact as to the meaning of these words, but ruled that as matter of law the under floor of the bridge in question was a part of the "surface" of the bridge and was not a part of the "framework" which the defendant was bound to keep in repair, this court, in sustaining the ruling of the judge, *observed* that the rule of law, which under proper conditions allows the admission of extrinsic evidence to explain the technical or peculiar meaning of a word as used in an instrument in writing, never has been applied to the interpretation of the language of a statute.

St. 1906, c. 463, Part I, § 38, provides that, after the completion of the work for the abolition of the crossing of a railroad with a public way at grade, "the expense of maintenance and repair shall be paid for as follows: if the public way crosses the railroad by an overhead bridge, the framework of the bridge and its abutments shall be maintained and kept in repair by the railroad corporation, and the surface of the bridge and its approaches shall be maintained and kept in repair by the city or town in which they are situated." The report of commissioners appointed in proceedings for the abolition of such a grade crossing ordered that "the superstructure of said bridge shall be built of iron or steel,

with hard pine underfloor and spruce plank wearing surface." In the bridge constructed under this order, the main girders, the floor beams and the stringers were of steel. The level of the tops of the floor beams was three inches above that of the tops of the stringers which were placed across them. On the string- ers and between the floor beams was laid an under floor of hard pine planks three inches thick, by which the whole level was raised to that of the top of the floor beams. Over all was laid a wearing surface of two inch spruce planks. In a suit in equity brought under St. 1908, c. 552, § 2, by the selectmen of the town in which the bridge was situated against the railroad corporation, to compel the defendant to repair the under floor of the bridge as being a part of its framework, it was *held*, that the under floor was not a part of the "framework" of the bridge but was a part of the "surface" which the town and not the defendant was obliged to maintain and keep in repair.

BILL IN EQUITY, filed in the Superior Court on June 13, 1910, under St. 1908, c. 552, § 2, by the selectmen of the town of Natick to compel the Boston and Albany Railroad Company to repair the hard pine under floor of a bridge over the tracks of the railroad of that corporation at North Main Street in Natick, in compliance with the terms of St. 1906, c. 463, Part I, § 38, relating to the maintenance and repair of bridges constructed under proceedings for the abolition of a grade crossing under that statute.

The case was heard by *Richardson*, J. The facts appeared in evidence which are stated in the opinion. The judge, against the objection and subject to the exception of the plaintiffs, admitted expert testimony as to what is the framework of a bridge and what is the surface of a bridge.

The judge made a memorandum of decision as follows: "Upon all the evidence and the explanations of the plans and the construction of this bridge, and considering the inconvenience of a divided responsibility in respect to the same parts of the floor of the bridge, my impression is, that the word 'framework' in section 38, referred to, was not intended to include the planking or flooring, even if two planks are put on instead of one; that the under planking, so called at this hearing, is not a part of the 'framework.' Whether there shall be two planks instead of one is a matter of flooring, and not a matter of framework. Therefore I think that the town, in such a bridge as I understand is constructed here, has the duty of keeping the flooring, whether it consists of one plank or two, in repair and order." There was another paragraph of the memorandum in regard to

the duty of a defendant street railway corporation, which is not material.

The judge ordered that a decree should be entered in accordance with the opinion expressed in the memorandum. The plaintiffs alleged exceptions to this order and to the admission of the expert testimony referred to above.

The case was argued at the bar in March, 1911, before *Knowlton,* C. J., *Morton, Hammond, Sheldon,* & *Rugg,* JJ., and afterwards was submitted on briefs to all the justices then constituting the court except *De Courcy,* J.

*W. R. Bigelow,* (*M. F. Kennedy* with him,) for the plaintiffs.
*W. Hudson,* (*G. P. Furber* with him,) for the defendants.

RUGG, C. J. This is a suit in equity brought by the selectmen of Natick under St. 1908, c. 552, § 2. The question presented is the meaning of the words of St. 1906, c. 463, Part I, § 38, as to the apportionment between the railroad and the town of the cost of maintenance of a bridge by which a highway spans the tracks of a railroad, built in pursuance of a grade crossing abolition. The physical facts of importance are that this bridge consists of main girders extending from abutment to abutment, which ultimately bore the entire weight of the bridge ; across these were six floor beams ; directly supported by these but with their upper plane three inches below the highest level of the floor beams were stringers or " I " beams, twenty-three of which were between each two floor beams. The girders, floor beams and stringers were of steel. On top of the stringers was laid the under floor of hard pine planks three inches in thickness. By these the elevation of the whole was brought even with that of the floor beams. Over all was laid the wearing surface of two inch spruce planks. Additional special flooring for the street railway tracks is not here material. There was testimony which was not contradicted, and appears to have been accepted as true, that the general purpose of the plan of two sets of planks was economy and safety, in that the wearing surface could be replaced as deterioration by use required, while the under floor which served as a general support for the traffic, being not directly exposed, would last much longer. There was also evidence, which does not seem to have been controverted, that the under flooring in bridge construction is always designed to be of

strength sufficient to support the load of travel, while the wearing surface planks do not add strength.   While bridges sometimes are built of one layer of planks of greater thickness, the better and prevailing practice seemingly is to use two layers of planks of different thickness and variety of wood.   The upper planking in this bridge has worn out and been replaced from time to time by the town.   Now the under planking needs to be renewed.   The point to be decided is whether the railroad or the town shall bear this expense.   The material words of the statute are " the expense of maintenance and repair shall be paid as follows: . . . the framework of the bridge and its abutments shall be maintained and kept in repair by the railroad corporation, and the surface of the bridge and its approaches shall be maintained and kept in repair by the city or town."

There was a hearing before a judge of the Superior Court, who filed a memorandum.   Although its phrase is not wholly clear, we understand it to be a ruling of law upon the physical facts above stated, and not a finding of fact, that the under planking is not a part of the " framework."   As a general rule, the language of a statute is a matter of law for interpretation by the court, and is not a subject as to which evidence of the meaning of words employed would be competent.   We are aware of no instance where the narrow rule permitting explanatory evidence, from those possessing expert knowledge, touching the meaning of words obviously used in a technical or peculiar sense in a written instrument has been extended to statutes.   *Brown* v. *Brown,* 8 Met. 573, 576.   *Ford* v. *Tirrell,* 9 Gray, 401.   *Easton* v. *Smith,* 20 Pick. 150, 156.   *Federal Ins. Co.* v. *Gilmour,* 206 Mass. 203.   The opinions of individual legislators who framed the statute would have been inadmissible.   *Browne* v. *Turner,* 174 Mass. 150, 154.   *United States* v. *Trans-Missouri Freight Association,* 166 U. S. 290, 317, 319.   But the trial judge does not appear to have proceeded on the theory of such extension of the rule.   The physical construction of the bridge being explained, he treated as a question of law what was " framework" to be kept in repair by the railroad and what was " surface " to be repaired by the town.   The correctness of his ruling of law appears to be fairly open by the exceptions.

" Framework " as applied to things built or constructed means

that which furnishes form or strength, or both.   It is used here
as the antithesis of "surface."   It is clear that "surface" is not
employed in its geometrical sense as signifying a plane.   It in-
cludes obviously some degree of thickness.

The report of the commissioners provided that "the superstruc-
ture of said bridge shall be built of iron or steel, with hard pine
underfloor and spruce plank wearing surface."   This language
seems to indicate that they treated the superstructure of the
bridge as consisting of two main features, the iron or steel on
the one side and the under floor and wearing surface on the
other side.   In other words it consisted of the steel framework
and the double flooring which was the surface of a continuous
roadway.   The use of the words "wearing surface" has some
tendency to show that the spruce plank constituted only a part
of the "surface" mentioned in the statute, while the words
"under flooring" likewise tend to indicate a fraction to be united
with that which is above in making a single unit.   This unit
must be the "surface" mentioned in the statute.   "Surface"
is used in contradistinction to "framework" and is tantamount
to flooring when one considers a bridge as a whole, to be kept
in repair in part by a railroad and in part by a town.   The rail-
road furnishes the support or "framework" for the road or
"surface" which the town is to maintain.   If the report of the
commissioners had required but one layer of planks five inches
in thickness, that plainly would have been all "surface."   The
fact that two layers, each of thinner planks, were ordered does
not affect the substance of the matter, which was in fact the
surface of the street as distinguished from the supporting
framework.

In the division of the whole structure of a bridge into these
two parts, the word "framework" has some tendency to point out
that which constitutes the carrying strength of the bridge, while
"surface" seems more nearly to relate to that which within the
limits of the carrying strength supports the immediate burden
of travel.   Both layers of planks are needed for this latter
purpose.

This interpretation seems more simple, direct and natural,
and avoids some troublesome questions of liability which might
arise if the maintenance of different layers of plank laid one

upon the other were apportioned to different parties. While the question is a close one, we incline to treat the word "surface" as including all the flooring.

*Leary* v. *Boston Elevated Railway*, 180 Mass. 203, does not appear inconsistent with this view, for there the language under discussion was "surface material of streets" in connection with "paving" and "upper planking," thus differing materially from that here construed.

*Exceptions overruled.*