CLIFTON E. FLAGG & another vs. INHABITANTS OF CONCORD.

Middlesex.   October 21, 22, 1915. — February 9, 1916.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Water Supply. Eminent Domain. Damages,* For property taken or impaired under statutory authority. *Evidence,* Materiality.

In taking for the water supply of a town the water of a great pond as artificially raised by a certain dam and the land under the water, where for the purposes named in the statute under which the taking is made a fee in the artificially flooded land under the water is not required and the act does not authorize expressly the taking of a fee, only an easement in such land is acquired by the town by the taking, but such easement to keep and use the water over the land is an exclusive easement and the whole beneficial use of the land in effect is taken.

In the present case, upon a petition for the assessment of damages for such a taking, an exception was sustained to the refusal of the presiding judge to rule that the town by the taking of the petitioner's land under the water took the right to its exclusive possession and that for this the petitioner was entitled to compensation.

The meaning and scope of a taking in writing of land under statutory authority, so far as it affects private rights of property, is a question of law to be decided by a court and not one of fact to be passed upon by a jury.

In the case stated above, it was *held,* that evidence introduced by the respondent and admitted by the judge against the petitioner's exception, consisting of a diagram showing a record based upon the actual observations of the witness, an engineer, of the height of the water in the pond since the taking by the respondent, was immaterial, having no bearing upon the real issue between the parties, the date as of which the damages must be assessed being fixed by the statute under which the taking was made.

PETITION, filed on September 5, 1912, by Clifton E. Flagg and Frank L. Roberts against the town of Concord, for the assessment of damages for the taking under St. 1884, c. 201, authorizing the respondent to increase its water supply, of about five acres of land, artificially flooded by a portion of the waters of Nagog Pond in the towns of Acton and Littleton, belonging to the petitioner Flagg as a part of his farm of ninety acres in Littleton, and a part of such five acres being included in a lease to the petitioner Roberts.

In the Superior Court the case was tried before *Hardy,* J.

Nagog Pond was a natural great pond. Since 1834 an artificial dam has been maintained at its outlet, flooding a strip of private property surrounding the pond, including about five acres of the farm of the petitioner Flagg. The evidence is described in the opinion. The respondent introduced as a witness an engineer who testified that the shore line of Nagog Pond in its flooded condition was about four miles in length. Against the objection of the petitioner this witness further was permitted to put in evidence a diagram showing a record based upon his actual observations of the height of the water in the pond since the taking by the town of Concord. To the admission of this evidence the petitioners excepted. The jury took a view of the premises.

The petitioners, among other requests, asked the judge to make the following rulings:

"3. By the taking in question of the land of the petitioner Flagg the respondent took the right to the exclusive possession thereof and for this the petitioners are entitled to compensation."

"5. The rights in the land taken by the town of Concord are subjects for compensation even though immediately after the taking they are such as might have been taken from the petitioners by virtue of an exercise of the police power of the State."

The judge refused to make these rulings. He left to the jury the following question:

"Did the petitioner [Flagg], after the taking of the land and water rights in question, by the town of Concord, on July 21, 1909, retain all his private common law rights in the waters of Nagog Pond as now flowed, so far as they were not inconsistent with the use and purpose defined in the statute?"

The jury answered this question in the affirmative. They returned a verdict for the petitioner Flagg in the sum of $978.74 and for the petitioner Roberts in the sum of $163.13. The petitioners alleged exceptions.

*J. P. Draper,* (*H. A. Baker* with him,) for the petitioners.

*R. A. Stewart,* (*P. Keyes & E. S. Kochersperger* with him,) for the respondent.

Rugg, C. J. This is a petition for the assessment of damages caused by a taking of the waters of Nagog Pond and the land under the same. Nagog Pond in its natural state was a great pond. Its normal level was raised by a dam in 1834, and about five acres of

land thus flooded belonged to the petitioner Flagg, subject to the easement of flowage which so had been acquired by prescription. This land was taken by the respondent.

The words of the taking, so far as here material, were of "all the waters" of the pond with its affluents and effluents, with certain exceptions, and "The land under said Nagog Pond up to the overflow level of the existing dam at the outlet . . . and all rights of flowage vested in or acquired by the present owners of said dam." It was declared that the taking was "for the purposes mentioned in said act and more particularly for laying out, establishing, operating and maintaining an additional water supply system" for the defendant town. The act referred to, St. 1884, c. 201, enumerates in § 2 the purposes for which land may be taken, as follows: "for raising, holding, diverting, purifying and preserving such waters," and for the erection thereon of "proper dams, reservoirs, buildings, fixtures and other structures."

In general the right to take lands and interests in lands is limited by the public need. There are no words in this act expressly conferring the power to take land in fee. It is not an inherent and absolute necessity in all cases that lands to be used for water supply be taken in fee. The quality of the estate to be taken commonly rests with the Legislature, and, in the absence of its definite declaration, only such estate as is necessary to the fulfilment of the public need passes under a taking. Sometimes a fee may be necessary by implication. *Winnisimmet Co.* v. *Grueby,* 209 Mass. 1. But the fee often, perhaps generally, is not required for a water supply. *Newton* v. *Newton,* 188 Mass. 226. *Perley* v. *Cambridge,* 220 Mass. 507, 513. The purpose of the taking fixes the extent of the use which is permissible thereunder. The owner of the fee retains the right to use the land for all purposes not inconsistent with the full enjoyment of the right taken by the public. One of the manifest purposes for which land is taken on the shore of a body of water appropriated for a municipal water supply is, as stated in the instant statute, to protect and preserve the purity of the water. A necessary incident of such preservation is the right to the exclusive use of the surface of the ground. Everybody else may be debarred from its confines. Whatever rights are acquired by the taking may be exercised at once. It is of no consequence when in fact they are exercised. This is the precise point decided

in *Newton* v. *Perry*, 163 Mass. 319. The principle is thoroughly settled and finds illustration in many cases. See, for example, *Ham* v. *Salem*, 100 Mass. 350; *Howe* v. *Weymouth*, 148 Mass. 605; *Lincoln* v. *Commonwealth*, 164 Mass. 1, 10; *Googins* v. *Boston & Albany Railroad*, 155 Mass. 505; *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad*, 104 Mass. 1, 9; *Walpole* v. *Massachusetts Chemical Co.* 192 Mass. 66. The whole beneficial use of the land in effect is taken. The petitioners' damages must be assessed now for all injuries sustained by the taking. Future exercise of rights included within the scope of this taking, although suffered to lie dormant for a considerable time, affords no ground for an additional assessment of damage in the future. The extent of the petitioners' damage is measured by the extent of the rights included within the taking by the respondent, and not by the extent of the exercise of such rights.

There is nothing in the circumstance, that the land taken from the petitioner Flagg was adjacent to a great pond, which gives him further rights to pass and repass over it than he would have had if the water taken had been that of a private reservoir. When taken by the respondent for the purpose stated, the right to exclude everybody, including the petitioner, attached to the respondent. See *Slater* v. *Gunn*, 170 Mass. 509.

The character of this taking distinguishes it from takings of easements for the maintenance of underground or other structures which manifestly leave a considerable beneficial use in the owner of the fee. *Butchers Slaughtering & Melting Association* v. *Commonwealth*, 169 Mass. 103. *Perley* v. *Cambridge*, 220 Mass. 507, 513, and cases there collected.

It therefore was error for the judge to deny the petitioners' third request, to the effect that the respondent took the right to the exclusive possession of the land of Flagg, and to leave to the jury the determination of the question as a fact, what was the extent of the right taken by the respondent, whether it was exclusive in its nature and whether the petitioner might not still have a right of travel across the land taken. The meaning and scope of an instrument of taking, so far as it affects private rights of property, is a question of law to be decided by the court and not a fact to be passed upon by a jury. See *Selectmen of Natick* v. *Boston & Albany Railroad*, 210 Mass. 229.

Sometimes, when a taking has been made of the waters of a great pond alone, it has been held that the rights of one of the public in its waters under the colony ordinance was not shown to be incompatible with the uses to which the water had been appropriated and that it could not be so ruled as matter of law under all circumstances. *Rockport* v. *Webster*, 174 Mass. 385. That has no application to the present case. The petitioner is not seeking damage for any interference with the rights he has exercised as one of the public.

The act authorizes the respondent to take "all the waters of Nagog Pond" and the instrument of taking was coextensive with the power. The circumstances of the case at bar and the terms of this act distinguish it from *Framingham Water Co.* v. *Old Colony Railroad*, 176 Mass. 404, while the words of the taking are different from those in *Fosgate* v. *Hudson*, 178 Mass. 225.

It follows that the petitioner Flagg was deprived of all private rights in the waters of the great pond because the taking excluded him from access to those waters. His private rights in this regard were only those which resulted from his ownership of the fee of the five acres over which the waters of the pond flowed by reason of the dam erected at the outlet of the pond in 1834. *Paine* v. *Woods*, 108 Mass. 160, 173. *Barker* v. *Bates*, 13 Pick. 255, 261. Had it not been for the flowage of water over his land, the petitioners would have been entitled to no damage for the taking of the water. *Fay* v. *Salem & Danvers Aqueduct Co.* 111 Mass. 27. *Attorney General* v. *Herrick*, 190 Mass. 307. The petitioner Flagg had no right, so far as appears, to the continued maintenance of the dam. It might have been taken down by its owner without incurring any liability to that petitioner. But its existence was a circumstance to be considered in estimating his damage. *Lakeside Manuf. Co.* v. *Worcester*, 186 Mass. 552, 556. Of course he had no title to the waters of the great pond even so far as they overflowed land of which he owned the fee. His right was "at best of a precarious nature. Such water is hardly susceptible of absolute ownership or of any other than a usufructuary right, capable of enforcement and enjoyment only while it remains within the domain of its possessor." *Lynnfield* v. *Peabody*, 219 Mass. 322, 332. See *Sprague* v. *Minon*, 195 Mass. 581. Even these insecure rights must be exercised with reference to like rights by

others similarly situated, to the rights of the general public, and to the rights of lower riparian owners. *Stratton* v. *Mt. Hermon Boys' School,* 216 Mass. 83. But such as they were, the plaintiff has been deprived of them by the taking of the defendant.

The diagram showing the height of the water in the pond since the taking had no bearing upon the real issues between the parties. The date established by the act as the one as of which damages must be assessed is the one which fixes the rights of the parties. St. 1884, c. 201, § 7. Subsequent conduct is immaterial on that issue. *Imbescheid* v. *Old Colony Railroad,* 171 Mass. 209.

The grounds of this decision render unnecessary the consideration of that portion of the charge as to the possibility that the petitioners' rights might be affected by police regulations passed after the taking. That subject becomes immaterial.

*Exceptions sustained.*