STATE EX REL. MCNUTT ET AL. *v.* ORCUTT ET AL.

[No. 26,460. Filed February 5, 1936. Rehearing denied April 27, 1937.]

*Philip Lutz, Jr.,* Attorney-General, and *William E. Bussell,* Deputy Attorney-General, for appellant.

*Kivett & Kivett, Corr & Bowen,* and *Q. Austen East,* for appellees.

FANSLER, J.—Appellant began this proceeding in the exercise of the power of eminent domain for the purpose of appropriating two certain tracts of land, the first, containing 6.65 acres, being the property of Minnie P.

Orcutt, and the second, consisting of .85 part of an acre, being the property of Minnie P. Orcutt and Charles S. Orcutt, her husband, as tenants by the entireties. It is alleged that the land condemned is to be used for state forestry purposes. Appraisers appointed by the court fixed the damages of Minnie P. Orcutt at $424.50, and the damages of Minnie P. Orcutt and Charles S. Orcutt at $25.50. Exceptions to this report were filed by each of the parties, and the cause being at issue upon the question of the amount of damages was submitted to the jury for trial, which resulted in a verdict against appellant and in favor of Minnie P. Orcutt in the sum of $9,710.15, and in favor of Minnie P. Orcutt and Charles S. Orcutt in the sum of $17. Appellant's motions for a new trial and to modify the judgment were overruled, and these rulings are assigned as error.

It appears that appellee Minnie P. Orcutt is the owner of 120 acres of land, consisting of three 40-acre tracts lying in a row from east to west; that the 6.65 acres appropriated is an irregular piece out of the north part of the east 40 and the northeast corner of the middle 40; that appellees, Minnie P. Orcutt and Charles S. Orcutt, are the owners as tenants by the entireties of a 5-acre tract immediately adjoining the northeast corner of the each 40 acres of Minnie P. Orcutt's land upon the east. The .85 part of an acre appropriated is part of this 5-acre tract. The 120 acres do not touch upon any public highway, but are entirely surrounded by land owned by the state, except at one point where they adjoin the land of a stranger and the point where they adjoin the land of Minnie P. Orcutt and Charles S. Orcutt. The 5-acre tract belonging to Minnie P. Orcutt and Charles S. Orcutt is located upon a public highway. Title to the 120 acres and the 5 acres was formerly united in the same person. At that time there

was a roadway leading from the public highway across the 5-acre tract and across the 6.65 acres appropriated out of the 120-acre tract, and into the 120-acre tract, which was used as a means of ingress and egress from the 120 acres, and the same road has been continuously used for the same purpose until the present time, and is the only means of ingress and egress from the 120 acres and from what will remain of the 120 acres after the appropriation of the 6.65 acres.

The case was tried, evidence was admitted, and jury instructed upon the theory that the appropriation of the 6.65 acres entirely cuts off the right to use the private way above described as a means of ingress and egress from the remaining 113 acres, and damages were assessed upon the theory that the 113 acres were entirely cut off from any means of reaching the public highway. The correctness of this theory is questioned by the errors assigned.

There is a universally accepted doctrine that: "Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case, the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made." *John Hancock Mutual Life Insurance Co.* v. *Patterson* (1885), 103 Ind.

582, 586, 2 N. E. 188. The private way in question was in use when all of the tracts of land here involved were in the possession of a common owner, and was then, and has continued to be, the only means of reaching the public highway from the interior of the 120-acre tract. Whether the 5-acre tract or the 120-acre tract was first conveyed by the common owner does not appear nor is it material, since there was an obvious servitude imposed upon the 5-acre tract, now owned by Minnie P. Orcutt and Charles S. Orcutt, in favor of the 120-acre tract, to the extent of the use of the way as a means of communication with the public highway. The same roadway has been in continuous use for more than twenty years, not only across the 5-acre tract, but also the 6.65 acres, which are by this proceeding appropriated out of the 120-acre tract. Appellees do not question that, under the rule of law above referred to, in the absence of an express provision to the contrary, a way of necessity would be implied upon a severance of the land appropriated by grant or judicial proceeding, but they insist that the rule does not apply where the severance is brought about by exercise of the power of eminent domain; that there is no grant or contract involved in a condemnation proceeding; and that it is not a judicial proceeding, since the power of eminent domain vests in the legislative branch of the government. They rely upon those authorities which say that a way of necessity rests upon the implied intention of the parties, and contend that in a condemnation proceeding there can be no implied grants or reservations, since there is no contractual relationship.

It is unquestionably the rule that the right to a way of necessity cannot arise against the lands of a stranger. The right can only be asserted where the tract claiming the right of way and that over which it is claimed descended from a common owner. The court, in *Stewart*

v. *Hartman et al.* (1874), 46 Ind. 331, 341, 342, quotes as follows: "Kent says: 'Sergeant Williams is of opinion, that the right of way, when claimed by necessity, is founded entirely upon grant, and derives its force and origin from it. It is either created by express words, or it is created by operation of law, as incident to the grant; so that, in both cases, the grant is the foundation of the title. If this be a sound construction of the rule, then it follows, that, in the cases I have mentioned, the right of the grantor to a way over the land he has sold, to his remaining land, must be founded upon an implied restriction, incident to the grant, and that it cannot be supposed the grantor meant to deprive himself of all use of his remaining land. This would be placing the right upon a reasonable foundation, and one consistent with the general principles of law.' 3 Kent Com. 423, original paging. Blackstone says: 'A right of way may also arise by act and operation of law: for, if a man grants me a piece of ground in the middle of his field, he at the same time tacitly and impliedly gives me a way to come to it; and I may cross his land for that purpose without trespass.' 2 Bl. Com. 36, star paging. In the same place, Mr. Chitty, in his notes, says: 'A way of necessity, when the nature of it is considered, will be found to be nothing else but a way by grant. It derives its origin from a grant, for there seems to be no difference where a thing is granted by express words, and where by operation of law it passes as incident to the grant; and of course it is as necessary to set forth the title to a way of necessity as it is to a way by express grant'." And concludes that: "There cannot legally exist a general way of necessity without reference to the manner whereby the land over which the way is claimed became charged with the burden." It may be that the necessity of tracing title to a common owner to find a basis for the right to a way of

necessity induced the statements that the right derives its force and origin from a grant, and still it is recognized that the right arises by operation of law, and not in any event by express contract. It is often said that the taking of land under the power of eminent domain is in the nature of a compulsory sale at a price to be agreed upon, or, upon failure of agreement, to be fixed by judicial determination. See cases, 20 C. J. 515, note 11. It is said upon abundant authority: "As in the case of the implication of easments generally, and with more potent reasons, a right to a way of necessity may arise where the severance of land is affected by judicial or legal proceedings." 9 R. C. L. 771. But it is clear that in many, if not in most, judicial proceedings there is no express grant from the owner, if there be grant at all, and that in most cases the severance is involuntary. Where there are express convenants in a deed, conveying all right, title, and interest of every kind and character, the implication that the parties contracted for, and that there was a grant of an easement for, a way is contrary to the express convenants, so that, in fact, it cannot be truly said that the right of way was created by grant or agreement of the parties. It may be more correctly said that it is created notwithstanding the terms of a contract to the contrary, and it is clearly apparent that the right is enforced without any evidence whatever of the intention of the parties. It would seem that to treat the transaction as an enforced grant or sale by the owner involves no more difficulties than are involved in implying an intention contrary to that which is expressed in a written conveyance. It is said in *Dillman et al.* v. *Hoffman* (1875), 38 Wis. 559, that the doctrine originally arose because it was for the public good that the land should not be unoccupied, and it is said by the annotator in 8 L. R. A. 329, that this public policy is probably the true foundation for the doctrine.

But, whatever is said to be the source of the doctrine, it is clearly apparent that it did arise in fact from the consciousness of courts that any other rule would be against the public interest. And if public policy requires that, in the absence of an express agreement to the contrary, the reservation of a way of necessity will be implied as against one who takes by private grant, no reason is seen why the same policy should not require the same result where the state enforces its right to take private property. If the public good is promoted in one instance it is in the other. The reasons for enforcing the right are identical in either case, and no good reason is seen why the state should not be presumed to have intended that which its policy presumes was intended by an individual under like circumstances.

In *Cleveland, C. C. & St. L. R. Co.* v. *Smith* (1912), 177 Ind. 524, 539, 97 N. E. 164, the question under consideration was whether a landowner had an easement to pass over a railroad right of way through his land which had been taken by condemnation. It is said: "There was, after the 1869 condemnation, no practical means of travel to or from the tract south of the railroad and west of the creek, except over appellant's right of way, and in such case, a right of way of necessity, was, by legal implication, reserved in the owner, when the original condemnation proceedings were had." The cases cited and relied on are *John Hancock Mutual Life Ins. Co.* v. *Patterson, supra,* and others dealing with the right to a way of necessity in transactions between individuals. The court obviously believed that the same principles controlled the situation, and that the right to a way of necessity arises by implication of law where property is appropriated through the power of eminent domain, in the same manner as in the case of transactions between individuals. The court there apparently saw no distinction, and no distinction is

seen now. And there is no basis for a distinction between cases where the state itself takes or where the power of eminent domain is exercised by municipalities or private corporations. There is nothing inconsistent with this view in the opinion in Cleveland, *C. C. & St. L. R. Co.* v. *Hadley et al.* (1913), 179 Ind. 429, 101 N. E. 473. It may be inferred from the language of that opinion that, where a railroad condemns a right of way which divides the owner's land, the owner has the right to a crossing as a way of necessity, and that the cost and expense of constructing the crossing and maintaining it was a proper element to take into consideration in fixing the damage. There is now a statute providing for such crossings. In the case of *New Jersey, etc., R. Co.* v. *Tutt et al.* (1907), 168 Ind. 205, 80 N. E. 420, it was held that, when a railroad condemns a right of way over land through which there is an artificial ditch which serves the purpose of carrying away surface water only, there was no easement or right in the landowner to have the ditch maintained across the right of way, and it was assumed that damages for its obstruction were awarded at the time of the condemnation. The decision is based upon the ground that one may take such measures as he may deem expedient to keep surface water off from him, and, quite clearly, the court did not understand that the rule of a way of necessity was broad enough to include the right to drain surface water. The opinions in *Evansville Terminal Railway* v. *Heerdink* (1910), 174 Ind. 537, 92 N. E. 548, and *Louisville & N. R. Co. et al.* v. *Western Union Telegraph Co.* (1916), 184 Ind. 531, 111 N. E. 802, deal with and distinguish unaccepted promissory stipulations for future undertakings on the part of the condemning party of its own motion from reserved rights and easements, and there is nothing in those opinions inconsistent with the views here expressed. Appellees cite

the case of *Cedar Rapids, etc., R. Co.* v. *Raymond et al.* (1887), 37 Minn 204, 33 N. W. 704, which holds that in the case of condemnation of land by a railroad there are no implied reservations of a way of necessity. An examination of the opinion indicates that the decision was influenced by a statute. They also cite *Banks et al.* v. *School Directors, etc., of McLean County* (1901), 194 Ill. 247, 62 N. E. 604. That case involved the condemnation of a site for a school house in the center of a pasture. There are expressions in the case which seem to sustain appellees' view, but the decision rests upon the ground that, by the issues and judgment, a way to the land condemned was excluded from the consideration of the jury in fixing the damages.

The court therefore erred in the giving and refusal of instructions and the admission of evidence, upon the theory that the doctrine of way of necessity does not apply to condemnation proceedings.

Upon motion of appellees, the court awarded judgment for the amount of the verdict plus interest at the rate of 6 per cent. per annum from the 19th day of July, 1933, which is said in the judgment to be the date on which the plaintiff took possession. Appellant contends that the state is not liable for the payment of interest, except where there is a positive statute or an express contract providing for interest. But the Constitution provides that: "No man's property shall be taken by law, without just compensation." Art. 1, §21, Constitution of Indiana. In *New York, C. & St. L. R. Co.* v. *Roper et al.* (1911), 176 Ind. 497, 96 N. E. 468, it is held that, in cases in which the jury is required to determine the value of property at a given date in awarding damages, interest should be added to the date of verdict, and that otherwise the injured party is not fully compensated. Many persuasive reasons are given in demonstrating that compensation in such cases

is not complete without interest for delay in payment. The reasoning fully applies to condemnation cases, and requires us to conclude that interest is a proper element of damage. But the interest should be included in the verdict, and the jury should be· instructed accordingly, and there should be evidence as to the date of taking, for, if the landowner is permitted to remain in possession, notwithstanding title may be treated as passing as of the filing of proceedings, and remains in possession and enjoys the benefits of the appropriated land, interest should not be allowed. The question of interest in any given case is one of fact for the jury. For a discussion of other elements which affect the rule, see *Schnull et al.* v. *Indianapolis Union Railway Co.* (1921), 190 Ind. 572, 131 N. E. 51; and *State* v. *Hamer et al.* (1936), post 570, 199 N. E. 589. Appellees were entitled to an instruction covering the elements of damage, and if interest was not included they cannot complain. The court erred in adding interest to the amount of the verdict.

In view of what we have said, the other questions presented are not likely to arise upon another trial.

Mrs. Orcutt's land is used as a fruit and berry farm. In the court below it was insisted that by the condemnation she would be deprived of access to the remaining 113 acres, and evidence was introduced to show that without a means of reaching the highway the land would be of no value whatever. Appellant insisted that it took the condemned land subject to a right of way of necessity over the driveway which ·had been used in connection· with the farm, and that the remaining 113 acres would continue to have the right to use the driveway, and that damages should be fixed accordingly, and consistently objected to testimony offered and instructions which were tendered upon the contrary theory, and tendered instructions consistent

with its own theory. Since Mrs. Orcutt did not seem to wish to be deprived of the use of her remaining land, and since appellant insisted that it did not want to deprive her of that use, it is difficult to understand why the pleadings were not amended or other steps taken at the trial to clarify the issue and accomplish a result satisfactory to both parties. The case was tried upon appellee's theory, and the amount of recovery clearly indicates that the jury understood and believed that appellee's 113 acres would be useless. Upon a retrial it will be understood that appellees are entitled to damages based upon the value of the land taken, and any incidental damage to their remaining land, and that they cannot be deprived of their right of way to the public highway except in a proceeding which expressly condemns and deprives them of that right.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

Treanor, J., dissents.

## ON PETITION FOR REHEARING

FANSLER, J.—In their briefs on petition for rehearing, appellees assert that the opinion in the instant case is in irreconcilable conflict with the opinion in the case of *State* v. *Patten et al.* (1936), 209 Ind. 482, 199 N. E. 577, handed down the same day. But in this they are clearly in error. The Patten Case dealt with the right of the state to change the grade and elevation of a highway upon land previously condemned. It was contended that, by elevating the grade, approaches to the road were destroyed and the landowners were put to additional expense in building driveways and bridges. It was held that the expense and inconvenience incident to reaching the highway, no matter what the grade, must

be deemed to have been taken into consideration in fixing the damages in the original condemnation proceeding.

The case of *Cleveland, C. C. & St. L. Ry. Co.* v. *Hadley et al.* (1913), 179 Ind. 429, 101 N. E. 473, 45 L. R. A. (N. S.) 796, is cited and relied upon in both opinions. In the Patten Case it was relied upon as authority for the proposition that, in the taking of a right of way by the state, damages must be assessed in the first instance, upon the basis that the state will have the right to construct its highway in any way, and upon any grade, that it pleases. The Hadley Case is a railroad case, and it was deemed authority in a case where the condemnation of a right of way was by the state. As pointed out in the original opinion in the instant case, it may be inferred from the language used in the opinion in the Hadley Case that: "Where a railroad condemns a right of way which divides the owner's land, the owner has the right to a crossing as a way of necessity, and that the cost and expense of constructing the crossing and maintaining it was a proper element to take into consideration in fixing the damage." As pointed out further in the original opinion, it was expressly held in *Cleveland, C. C. & St. L. Ry. Co.* v. *Smith* (1912), 177 Ind. 524, 97 N. E. 164, that the right to a way of necessity was reserved in the owner of lands where a portion of the land was condemned by a railroad. The instant case went no further than to apply the rule to condemnation proceedings by the state itself, in the same manner in which the last quoted case applied it to condemnation proceedings by a railroad. In the Patten Case the same analogy is drawn, and the rule concerning damages in the case of condemnation by a railroad is applied to condemnations by the state itself.

A careful examination of the opinions and authorities relied upon will disclose that there is no conflict, and

that both are sustained by former decisions of this court in every respect, except upon the question as to whether or not the same rules of law apply to condemnation proceedings by the state itself that have been applied to condemnation by railroads or other quasi-public institutions. Both cases hold that the same rules apply, and therefore the decisions are consistent and support each other.

In *State* v. *Hamer et al.* (1936), post 570, 199 N. E. 589, the case of *Schnull et al.* v. *Indianapolis Union Railway Co.* (1921), 190 Ind. 572, 131 N. E. 51, is quoted to the effect that the landowner is entitled to interest upon the full amount of the award of damages from the time the condemnor took possession of the property. The question of whether the amount of interest was to be determined and awarded by the court or by the jury was not presented either in the Schnull Case or the Hamer Case. Upon that question we abide by the rule laid down in the instant case, that the interest must be considered part of the compensation, and that it should be taken into consideration by the jury in fixing the compensation.

It is suggested that the opinion does not touch upon a matter which will be of importance upon another trial. We quote from the brief: "The record discloses that on that part of the 120 acres of land which was taken, the roadway referred to was at times obstructed by bars or other barriers. This is highly important for the reason that if another trial is to be had, the extent of the damage to the remainder of the land will be determined in no small degree upon whether or not appellee will have an open and unobstructed roadway from the remainder of the 120 acres to the highway or whether it will be subject to obstruction by gates or bars. While the court places its decision on the theory of a way of necessity, no notice is taken

of the rule which allows a servient estate to obstruct a way of necessity with gates or bars unless otherwise expressed in the transaction out of which the right arose, and that such right is inconsistent with a taking by eminent domain." No authority is cited as supporting the rule referred to in the last sentence quoted.

In *John Hancock Mutual Life Insurance Co.* v. *Patterson* (1885), 103 Ind. 582, 586, 2 N. E. 188, 191, 53 Am. Rep. 550, 554, cited in the original opinion, it is said that the way will continue "in substantially the same condition in which it appeared and was used when the grant was made." The record shows that the 120 acres of land was used as a berry and fruit farm; that the products of the farm were sold to customers who came upon the place to purchase them; in other words, it was a market as well as a farm; that, to accommodate these customers, the way was left open during the fruit and berry season, but that at times out of the fruit and berry season it was obstructed by bars. No reason is seen why the owner of the remainder of the 120 acres should not place barriers upon the dividing line, since, while the owner of the dominant estate has the right to cross the land which is taken, the owner of the servient estate has no right to use the way across the land into the dominant estate. The character of the way is to be determined from the facts in each particular case. A mere temporary or provisional arrangement or use will not control the character of the way, but if, from the character of the use which the owner made of the berry and fruit farm, it is apparent that it is necessary to its fair enjoyment, for the purposes for which it was used, that the way to it shall be open, the character of the way will be established by the necessity for such use, and the right to continue it as

an open way will continue. *John Hancock Mutual Life Insurance Co.* v. *Patterson, supra.*

It will be noted that in the trial court and here appellees have insisted that the state had got something by the condemnation proceeding that it did not claim, and did not want, and insisted that it did not have, in order to claim damages, upon the theory that the value of the entire 120-acre tract had been destroyed, and was useless for want of a means of ingress and egress. If the determination of the jury as to the value of the land was correct, and no more nor less than compensation, and it must be assumed to be, appellees are not harmed or injured in any way by the reversal of this judgment, since it is now made clear that they have the use of their farm and the use of a means of egress and ingress. On the contrary, appellees may benefit by the reversal, since it is a matter of common knowledge that the value of farm lands generally and their use has increased in the interval. The effect of the opinion is to protect the rights of land owners against the state and others who exercise the right of eminent domain. The vigor with which appellees contend for the affirmance of the judgment would seem to indicate that they consider the money judgment of more value than the use of the land.

Rehearing denied.

## ON PETITION FOR REHEARING DISSENTING OPINION

TREANOR, J., DISSENTING.—I respectfully dissent from the action of the court in overruling appellees' petition for rehearing.

The plaintiff in the condemnation proceeding was the State of Indiana on the relation of the Department of Public Works of the State of Indiana. The Board of Public Works by resolution had declared that it was necessary for the State of Indiana to acquire the "rights,

title and interest" of Minnie P. Orcutt in and to the real estate in question for state forestry purposes and for other uses connected therewith. The complaint contained the following:

"The plaintiff further alleges that as stated in said resolution, it is necessary in carrying out the powers and duties of said Board of Public Works to acquire the above described real estate for state forestry purposes; that said above described real estate is adjacent to other real estate now owned by the State of Indiana and used for state forestry purposes and that the above described real estate when acquired will be used by the State of Indiana and the Board of Public Works for state forestry purposes and for other uses connected therewith and provided for by law. . . .

"WHEREFORE, the plaintiff prays for an order of condemnation of the rights, title and interest of the above named defendants, in and to the above described lands for the uses and purposes aforesaid. . . . that all steps be taken and that all proceedings be had that may be necessary for this plaintiff to acquire all right, title and interest of said defendants in and to said real estate owned and claimed by the defendant, Minnie P. Orcutt, and for the uses and purposes set forth herein."

No objections to the proceedings were filed by the appellees and the court thereupon found for the State of Indiana on the relation of the Board of Public Works and entered judgment in part as follows:

"It is therefore ordered, adjudged and decreed that said real estate as above described should be, and is hereby condemned for uses and purposes as described in the complaint, and the Court now appoints . . . to assess the damages, if any, which said defendants herein may sustain by reason of the condemnation as proposed in said complaint. . . ."

The cause then came to trial on exceptions to the report of the appraisers, and among the instructions given by the court for the purpose of guiding the jury in the assessment of damages, was one to the effect that

the jury should take into consideration that the condemnation of all right, title and interest of Minnie Orcutt in the land in question had cut off access to the remaining land of Minnie Orcutt from the highway. And although the State of Indiana on the relation of the Board of Public Works requested the Monroe Circuit Court to enter judgment which purported to deprive Minnie Orcutt of all right, title and interest in the appropriated land, the plaintiff objected to the foregoing instruction and insisted that a way of necessity to the remaining land of Minnie Orcutt was reserved by law.

Upon appeal to this court the contention of the appellant was sustained. The following excerpt from the opinion of the court expresses the court's reason for so holding:

"And if public policy requires that, in the absence of an express agreement to the contrary, the reservation of a way of necessity will be implied as against one who takes by private grant, no reason is seen why the same policy should not require the same result where the state enforces its right to take private property."

In my opinion both reason and authority forbid the application of the doctrine of an implied easement of right of way of necessity in cases where the severance of ownership is affected by an exercise of the power of eminent domain. There is no public policy that can qualify the public policy upon which rests the exercise of the power of eminent domain by the sovereign. To say that the sovereign, which is the source of all public policy, can be limited by judicial implication of public policy in a special situation is merely using words. There can be no reality in such a statement. The exercise of the power of eminent domain is an act of political sovereignty and can not be limited or controlled by

courts. The General Assembly of Indiana alone can place limitations upon the exercise of this power, subject only to the express constitutional limitations that compensation must be made, and to the implied limitation that the taking must be for a public purpose. As a practical matter the General Assembly speaking for the sovereign acts through agents and does place conditions or limitations upon the exercise of this sovereign power of eminent domain. But when the agents act within the authority conferred their acts have the full force of an exercise of the power of eminent domain by direct legislative declaration.

In the case of *Hallett* v. *Calvert*[1] the exercise of the power of eminent domain by a levee committee was in question. In passing upon the question this court used the following language:

> "The case seems to have been decided below upon the theory that the powers of the levee committee are confined to making necessary repairs to the levee to keep and maintain the same in its original condition, and that the court had jurisdiction and power to hear evidence and determine whether or not in its judgment the condemnation of the land and the use thereof is necessary. (Here the court quoted Sec. 27-816 Burns Annotated Statutes, 1933).
>
> "This statute vests the fullest discretion in the levee committee, and, if, in the judgment of the committee, the ground sought to be condemned was necessary not only to repair or maintain the levee, but to protect it, the committee has the power to condemn, and its judgment in the premises cannot be questioned or superseded by the judgment of the court."

In harmony with the foregoing are the statements of this court in the case of *Root* v. *State*:[2]

> "Even though the power of eminent domain is inherent in the state, an agent of the state can exer-

---

1. (1934), 207 Ind. 25, 26, 191 N. E. 77.
2. (1934), 207 Ind. 312, 313, 314, 192 N. E. 447.

cise the power only when the legislature has conferred the necessary authority. The occasion, mode, and conditions upon which an agent of the state may exercise the power of eminent domain in behalf of the state are to be prescribed by the legislature. *Richland School Township* v. *Overmeyer* (1905), 164 Ind. 382, 73 N. E. 811. The delegation to a state agency of the right to exercise the power of eminent domain carries with it the authority to determine the necessity for its exercise to accomplish an authorized purpose, and the question of such necessity is not for judicial determination. But a judicial question will be presented when it is insisted that the purpose for which the agent seeks to exercise the power of eminent domain is unauthorized. Consequently, while the courts will not review a decision of the highway commission as to the necessity of separating the grades of two intersecting state highways, the courts will examine the statutory grant of authority to determine whether there is included therein the authority to exercise the power of eminent domain for the purpose of acquiring land deemed necessary in the separation of such grades."

The authority of the Board of Public Works of the State of Indiana to exercise the power of eminent domain is founded in the original grant of authority to the conservation commission.[3] There was no contention by plaintiff below, nor is there any indication in the opinion and decision of this court in this appeal, that the State of Indiana, acting through the Board of Public Works, did not have the power in the instant case to deprive appellee Orcutt of the right of way across the appropriated land.

The crux of the controversy is whether the State of Indiana, acting through its lawfully constituted agent, the Board of Public Works, did appropriate all right, title and interest of Minnie Orcutt, including the potential easement of a right of way. The Board of Public Works adopted its resolution in accordance with statu-

3. Acts 1919, Ch. 60, §2, p. 375.

tory requirements, and in this resolution declared that it was necessary for the State of Indiana to acquire the rights, title and interest of the Orcutts in the real estate "for state forestry purposes and for other uses connected therewith;" and the jurisdiction of the Monroe Circuit Court was invoked to adjudge that all right, title and interest of the Orcutts therein had been appropriated by the State of Indiana in accordance with law. The court so adjudged. If the declaration of the Board of Public Works, and its complaint and the order of the Monroe Circuit Court are given their obvious factual and legal significance, the State of Indiana did effectively appropriate all right, title and interest of the Orcutts in the land in question; and since an easement of right of way is an interest in land, it must follow that the State of Indiana took the land free of an easement of right of way in favor of the land retained by the owner.

It is important to note that a court does not by its judgment appropriate land for the state and transfer "rights, title, and interest" of the owner to the state. The limit of the jurisdiction of the court is to determine whether the agents of the state have exercised the state's power of eminent domain in accordance with their authority.

If the General Assembly by direct legislative action had declared an appropriation of the rights, title and interest of the owner of the land in question, reciting in such act of appropriation that it was necessary for the state in carrying out its forestry project to acquire said rights, title and interest of the owners in and to the land, it is inconceivable that any court would assume to limit the legislative declaration of the extent of the taking by holding, as a matter of law, that a limitation was implied in fact. And courts have no power to determine how much, or how little authorized agents of the state can appropriate in the exercise of the state's

power of eminent domain. Courts are bound by the declaration of the General Assembly or its agents as to the extent of the appropriation; and cannot imply a limitation upon the exercise of a power which is incapable of being limited except by the General Assembly or by its authorized agents.

Since it is exclusively within the power of the State as a condemnor to determine what interests it will take in the land of the condemnee, it is necessary that the condemnor declare the extent of the taking. The condemnee is entirely without legal power to reserve any interest as against the condemnor. If the condemnor desires less than the entire interest of the condemnee the declaration of appropriation will indicate this by appropriate recitals. But such recitals do not represent a limitation upon the condemnor's power to take, nor an admission either of the power or intention of the condemnee to reserve an interest; but merely define the quantum of interest to be appropriated. This was clearly stated in the case of *Tyler* v. *Hudson*[4] as follows:

"No more land and no greater interest in it need be taken than the public use requires. If the right to make a particular use of the land is of benefit to the owner, and puts no new burden upon him, and does not interfere with the public use for which the land is taken, there is no reason that he should be deprived of that use, and be paid the value as damages; all the right to use the land except that right may be taken, and that be left in him to enjoy or not as he pleases. If the right is of value, a valuable right in the land will remain in him, though he may refuse to exercise it."

The State of Indiana having the power to take all right, title and interest of the owner, there can be no rational basis of an implication to take less when the formal declaration of appropriation recites that it is necessary for the state to acquire all, and when the complaint

4. (1888), 147 Mass. 609, 612, 18 N. E. 582.

seeks the appointment of appraisers "to appraise the value of the right, title and interest of the defendants in and to said real estate" and prays "that all steps be taken and that all proceedings be had that may be necessary for this plaintiff to acquire all right, title and interest of said defendants in and to said real estate owned and claimed by the defendant Minnie P. Orcutt."

The decisions of the courts recognize that the state in the exercise of its power of eminent domain may appropriate less than all the interest of the owner of a parcel of land; but the decisions also recognize that the instrument of appropriation, or the complaint must exclude the interests which the condemnor does not intend to take.

In the case of *St. Louis, K. & N. W. R. Co.* v. *Clark,*[5] the court discussed at length the privilege of the condemnor to take less than the whole interest in a particular parcel of land and pointed out the proper method of exercising this privilege as follows:

> "Where the condemning company proposes to reserve to the landowner some right or easement not reserved by the statute itself, the reservation should be made in the original or by an amended petition. In other words, the petition should specially set forth what the company proposes to take. The easement reserved to the landowner should be specifically defined and located, so that the rights of the parties may be then and thereafter protected."

This court cited the foregoing Missouri case with approval in the two cases of *Indianapolis, etc., Traction Co.* v. *Wiles* (1910), 174 Ind. 236, 242, 91 N. E. 161, and *Louisville, etc., R. Co.* v. *Western Union Tel. Co.* (1916), 184 Ind. 531, 111 N. E. 802. In the case of *Indianapolis, etc.* v. *Wiles, supra,* the opinion of this court pointed out that: "A proprietary right reserved in the owner of the fee and not appropriated is quite a different thing from

5. (1894), 121 Mo. 161, 25 S. W. 192, 26 L. R. A. 751, 763.

a promissory stipulation made on its own motion by the condemning party." And it was stated in the opinion that the landowner is not obliged to accept or be bound by such promissory stipulations, "but may insist upon full pecuniary compensation for property appropriated against his will, together with resultant damages." But the opinion contains the following statement, p. 242: "It is pretty well settled that in exercising the power of eminent domain a party may limit the rights to be appropriated, and reserve to the owner of the land certain rights and privileges not inconsistent with the public use to be acquired."

The later case of *Louisville etc., R. Co.* v. *Western Union Tel. Co., supra,* cites with approval the case of *Indianaplois, etc., Traction Co.* v. *Wiles, supra,* and *St. Louis, etc.,* v. *Clark, supra,* in support of its discussion of the difference between "a limited appropriation" and "promissory stipulations." The thought of this court on that subject is indicated by the following excerpts from the opinion in the Louisville Railway case, *supra* (p. 536) :

> "It has been held that a complaint for appropriation of land may be so drawn as to limit the rights to be acquired thereunder and so as to leave in the landowner certain easements and rights not taken by appropriation. When a limited appropriation of this kind is made the damages are assessed on the basis of the land appropriated as considered in connection with the rights and easements not taken and compensation is awarded accordingly. *Indianapolis, etc., Traction Co.* v. *Wiles* (1910), 174 Ind. 236, 91 N. E. 160; *St. Louis, etc., R. Co.* v. *Clark* (1894), 121 Mo. 169, 25 S. W. 192, 26 L. R. A. 751, note. A distinction is to be observed however between an appropriation subject to certain rights of the landowner excepted from the appropriation sought and left unaffected thereby in the landowner, and an attempt to impose unaccepted promissory stipulations and proposed agreements by the condemning party in respect to undertakings to be

performed subsequent to the time of appropriation. In the absence of an agreement, the party condemning must take the rights which he seeks to appropriate absolutely and unconditionally and he must make full compensation for what he takes. His unaccepted promise to do something in the future in case certain emergencies arise can not affect the character or the extent of the rights acquired and they can not be considered as affecting the amount of damages to be awarded."

The foregoing case of *Louisville etc. R. Co.* v. *Western Union Tel. Co., supra,* also cites with approval the case of *Evansville Terminal Railway* v. *Heerdink*[5a] which was decided shortly after the Wiles Case, supra. The following excerpts are from the opinion of this court in the Heerdink Case (p. 540) :

"There is the further question involved in this case, that there is a distinction recognized between an instrument of appropriation reserving rights in the landowner not inconsistent with the public use to be acquired, and unaccepted promissory stipulations of future undertakings, on the part of the condemning party of its own motion, which is pointed out in *Indianapolis, etc., Traction Co.* v. *Wiles* (1919), ante, 236. The offers in both the first and the second paragraph of answer, including stipulations of the deed, are so far promissory in character that, unless accepted by the landowner, they clearly fall within the rule in the case of *Indianapolis, etc., Traction Co.* v. *Wiles, supra,* so that they could not be treated as amendments to the complaint, owing to their promissory character, instead of being limitations upon the rights to be acquired by appellant, or reservations in the landowner. The reason for the rule lies in the right of one whose property is taken without limitation or reservation in the taking, by the power of eminent domain, to make his election to stand upon his right to damages once for all, or contract with reference to the matter . . . Had amendment of the complaint been sought, so as to present the question of a limitation upon the rights to be acquired, or defining the rights reserved, a different question might be pre-

5a.    (1910), 174 Ind. 537, 92 N. E. 548.

sented. That would have gone to the substantive matter, while, as it stands, the broad assertion of an easement of a way for an electric railway, with all its incidents, is presented without qualification. That the complaint might have been originally drawn or amended so as to limit the taking, or reserve an easement for drainage across the strip of ground so taken, so that damages might be assessed in view of that limitation or easement, is, we think, true; but it can only be done by a lawful amendment of an authorized pleading, which, in this case, was the complaint, so that in no event was there harmful error in striking out the answers and deed."

The foregoing cases clearly establish the rule in this state that a condemnor of land under a declaration of appropriation which purports to take all interest in the land, does as a matter of law, take all legal interests in the land unless the apparent purpose to take all legal interest is qualified by express limitations in the declaration of appropriation, or, perhaps, by appropriate allegation in the complaint which rests upon the declaration of appropriation. Which, after all, amounts simply to stating that the condemnor takes what he wants, and the only way of determining what he wants is by his own statement of what he intends to take. See also *New Jersey, etc., R. Co.* v. *Tutt* (1907), 168 Ind. 205, 80 N. E. 420; *Stauffer* v. *Cincinnati, etc. Railroad* (1804), 33 Ind. App. 356, 70 N. E. 543; *Cleveland, etc. R. Co.* v. *Smith* (1923), 192 Ind. 674, 138 N. E. 347; *Cleveland, etc. R. Co.* v. *Hadley* (1913), 179 Ind. 429, 441, 101 N. E. N. E. 473, 4 L. R. A. (N. S.) 796; *State* v. *Patten* (1936), 209 Ind. 482, 199 N. E. 577.

The recent decision of this court in *State of Indiana* v. *Patten, supra,* gives effect to a rule which is of special significance in this case. In that case the owners of land had voluntarily granted to the State Highway Commission a right of way. The Commission caused the grade

of the road bed to be raised and in order to avoid taking additional land, constructed perpendicular retaining walls, and as a result of this construction destroyed the means of ingress and egress from the road to the landowner's farm. This court upheld the contention of the State of Indiana that the landowner could not recover additional damages because of the injury resulting from the change of grade. This court's position is made clear by the following excerpt from its opinion (p. 582):

"When the appellees granted to the Commission the right of way, they then had the right and the power to limit the height of the grade of the roadbed; and, if the commission had not seen fit to accept the limitations, it could have then condemned the land and so use it in the most advantageous manner for road purposes, and damages would have been fixed as provided by statute. The State Highway Commission had the right to purchase the land or acquire it under the right of eminent domain. Section 36-118 Burns' 1933. And, having purchased the right of way, it had the same right to raise the grade as it would have had if it had obtained the same by condemnation proceedings, without being liable for damages to appellees other than originally fixed. If the right of way had been procured by condemnation proceedings, all possible damages would have then been awarded except such as might have resulted from an improper or negligent construction of the improvement. As the right of way was granted by deed, without limitation, the appellees waived any action for damages on account of the change of grade except such as might result from an improper or negligent construction of the improvement. There is no charge of improper or negligent construction."

It is clear from the foregoing that the effect of a voluntary conveyance of property to the State of Indiana, as an alternative to having it taken by condemnation proceedings, has the same legal consequences as a taking by an exercise of the power of eminent domain; and if there is no reservation in favor of the grantor in the

deed of conveyance, the interest acquired by the state is as complete as it would be in case of condemnation under a declaration of appropriation which contains no limitation. Further this court lays down the rule that when an interest is acquired by the state, the state has the right to use that interest "in the most advantageous manner" for the purpose for which the interest is acquired. It follows from the foregoing that the owner of the land must anticipate all damages which may be caused by the most advantageous use of the interest by the state.

So in the instant case when the state demanded all right, title and interest of the owner of the land in question "for state forestry purposes and for other uses connected therewith," the owner of the land was bound to know that he was losing all interest in the land which conceivably could interfere with the most advantageous use of the land in question for state forestry purposes and for other uses connected therewith. The owner was bound to know that which is of common knowledge, that the state erects buildings on lands used for forestry purposes; that it creates artificial lakes by building dams; that it plants seedlings; that at least portions are surrounded by high wire fences for the purpose of inclosing wild animals and that it is impractical to have traveled roads through these inclosures; that frequently scenic roads are built through these forestry lands which might be of such a grade as to destroy the usefulness of an intersecting road which had been used by the owner. In short under the doctrine of the Patten Case, which is generally recognized as a sound doctrine, any implications indulged in by courts or parties in the instant case should be implications against an intention on the part of the owner to retain any interest whatever in the land taken.

A striking example of the application of the "most

advantageous use" rule is found in the case of *Baker* v. *City of Rochester.*[6] The city of Rochester in the State of New York had the power to take eminent domain in the fee simple title to lands for park purposes. The city appropriated without limitations expressed in the declaration of appropriation twelve acres out of 140 acres belonging to the appellant and adjoining the park land. The owner of the land had constructed and was using a large drain through the twelve acres for the purpose of draining about 60 acres of the remainder of his land. The landowner claimed as one item of damages the injury resulting to him through the loss of his drainage outlet. On the other hand the city contended that the owner had not lost his right to use the established drainage system for the benefit of the remainder of his land, together with the right to enter upon the park land to repair and maintain the drain. This contention of the city was disposed of in the following statement by the court:

> "The title in fee to the realty vests in the city. The absolute control of the lands thus taken for park purposes is secured to the city by legislative decree. There is no reservation of easements, water rights, or other privileges as connected with the portions of the property of the landowner from which the condemned premises are taken. (Here reference is made to the legislative acts showing that the city had ample power to take the fee and all right therein.) The implied reservation of the easement to pass the water accumulated upon the farm through the twelve acres would be inconsistent with the use of the twelve acres as a park. If the easement existed, the appellant would have the right to enter upon the park to repair the tile ditch when necessary in order to preserve the right of drainage. In so doing, he might have to tear up the walks, grass plots, or destroy shrubbery in the park, and interfere with its use as a park. . . . The right to appropriate property for public use in-

6. (1897), 48 N. Y. S. 764, p. 766, 24 App. Div. 383.

cludes not only the tangible thing owned, but every right and incident which accompany ownership. In case of land it includes any right or easement, and it has been held that it even includes a right of action for injuries to land. 6 Am. & Eng. Enc. Law (1st Ed.) p. 530, and cases cited. It is within the power of the legislature to authorize lands to be condemned for public use which may be permanent, to determine what estate shall be taken, and to authorize the taking of any fee or vested estate in its discretion."

It is of special significance that the court in the foregoing excerpt expressly recognized a rule which was declared to be the law in Indiana in *John Hancock Mut. Life Ins. Co.* v. *Patterson*[7] in which opinion the rule is stated as follows (p. 586):

"Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use."

The foregoing rule is as binding as the rule which reserves to the grantor a way of necessity, when the facts call for an application of the rule. Consequently, the reasoning in the New York case would apply to the instant case. And it would be a necessary deduction from the rule just quoted from the Patterson Case that in Indiana no greater protection, as a matter of law, would be given to a way of necessity than would be given to a servitude which at the time of the severance is in use and is reasonably necessary for the fair enjoyment of the retained property when such servitude is apparently permanent and obvious. And in the Indiana case of *New Jersey etc. Ry. Co.* v. *Tutt, supra,*

7. (1885), 103 Ind. 582, 2 N. E. 188.

this court held that such a servitude was destroyed in a condemnation proceeding by a railroad company. In reference to the servitude this court made the following statement, p. 212:

"It follows that appellant had the lawful right to destroy the drain by constructing its embankment across it; and in assessing appellees' damages it was proper for the appraisers to assume that appellant would exercise its legal rights in this respect, and they were thus warranted in considering the obstruction of the ditch, and the consequences of appellees' farm, as proper element of damage."

The case of *Prowattain* v. *City of Philadelphia*[8] decided by the Supreme Court of Pennsylvania, involved the question presented in the instant case. In that case plaintiff owned in fee an acre of land bordering on the highway known as the "Wissahickon Drive in Fairmount Park." This acre represented the remainder of a larger tract of land which had been owned by plaintiff's father. In 1871 the city of Philadelphia had appropriated for the use of Fairmount Park a part of this large tract leaving the ace in question which had been conveyed to plaintiff in fee in December, 1878. At the time of the appropriation in 1871 the tract of land lay on both sides of the "Wissahickon Road," and plaintiff's father owned the fee to the bed of the road, subject to the right of the turnpike as a way. When the land of plaintiff's father was appropriated it was taken by the city of Philadelphia for the use of Fairmount Park and included that portion of the Wissahickon Turnpike road which ran through the land owned by plaintiff's father. The acre which was owned by plaintiff lay within three feet of the public drive, which was included in Fairmount Park, and the plaintiff had exercised the right to pass to and from his land into this drive until June, 1883, when the city of Philadel-

8. (1886), 1 Pa. (Sad.) 437, 4 Atl. 806.

phia barred him from doing this by erecting a fence across the passage to his land. There was no other outlet for plaintiff except over the land of other people, and the nearest highway, except this drive, to the plaintiff's land, was more than half a mile distant. The plaintiff brought his action against the city of Philadelphia to recover damages for the deprivation of the right of way. At the trial the report of the jury awarding damages to plaintiff's father was offered in evidence and contained the following: "The foregoing damages are awarded, inclusive of all rights and title of the said Evan Prowattain to the Wissahickon creek, and all roads and highways." The trial court nonsuited the plaintiff on the grounds: (1) that the land had been taken by the city, by virtue of their right of eminent domain, for a purpose inconsistent with a right of way, with a result that no such right existed by implication of law; and (2) that the verdict of the jury to assess damages, and a quitclaim deed afterwards given, must be conclusively presumed to cover the loss in value resulting from any deprivation of access.

The judgment of the trial court was affirmed by the Supreme Court of Pennsylvania with the following statement (p. 442) :

"The facts of this case negative any implied reservation of the right of way now claimed. The opinion of the learned judge in disposing of the rule to take off nonsuit, contains a clear and correct statement of the law applicable to the case."

In the foregoing case no contention was made that there was express reference either to a taking or to a grant of the landowner's right of access to the public drive in either the report of the jury to assess damages or the quitclaim deed afterwards executed. The trial court clearly based its holding upon the assumption that the taking of the land for park purposes was inconsistent

with the existence of a private way of necessity through a part of the park, and upon the presumption that any loss suffered by the owner of the land by reason of being deprived of access to the highway had been compensated for on the original assessment of damages. The case clearly stands for the rule, as stated in the syllabus in the report of the case, that where land is taken by virtue of the right of eminent domain, for a purpose inconsistent with the existence of a right of way, no way of necessity is created by implication of law.

In the case of *Flagg* v. *Town of Concord*[9] there had been a general taking under the power of eminent domain with no limitations expressed. The court pointed out that the extent of plaintiff's damages must be measured by the extent of the interest taken, regardless of whether the condemnor should make use of the interest or not. The following is quoted from the opinion of the court (p. 571) :

> "Whatever rights are acquired by the taking may be exercised at once. It is of no consequence when in fact they are exercised. This is the precise point decided in *Newton* v. *Perry*, 163 Mass. 319, 39 N. E. 1032. The principle is thoroughly settled and finds illustration in many cases. See, for example, *Ham* v. *Salem*, 100 Mass. 350; *Howe* v. *Weymouth*, 148, Mass. 605, 20 N. E. 316; *Lincoln* v. *Com.*, 164 Mass. 1, 10, 41 N. E. 112; *Googins* v. *Boston & Albany R. R.*, 155 Mass. 505, 30 N. E. 71; *Proprietors of Locks and Canals* v. *Nashau & Lowell R. R.*, 104 Mass. 1. 9, 6 Am. Rep. 181; *Wapole* v. *Mass. Chemical Co.*, 192 Mass. 66, 78 N. E. 140. The whole beneficial use of the land in effect is taken. The plaintiffs' damages must be assessed now for all injuries sustained by the taking. Future exercise of rights included within the scope of this taking, although suffered to lie dormant for a considerable time, affords no ground for an additional assessment of damages in the future. The extent of the plaintiffs' damages is measured by the extent of the rights included

9. (1916), 222 Mass. 569, 111 N. E. 369.

within the taking by the defendant, and not by the extent of the exercise of such rights."

The opinion and decision of the Supreme Court of Massachusetts in the case of *Ham* v. *City of Salem*[10] is of special significance in the determination of the question presented by this appeal. The city of Salem had the power to take such lands as were necessary to procure and maintain a water supply for the city, including the right to lay mains and drains upon and over the lands taken. Under the procedure applicable to the taking of land the appropriation was accomplished by filing a description of the lands as required by statute. The description had been filed designating the land to be taken and with no limitations expressed. The city took the position that damages should be assessed with the assumption that the landowner would still have a right of way across the lands, and offered evidence to show that such right would still remain open to the landowner. The court disposed of this contention as follows (p. 351) :

> "In thus taking the land, the company may reserve to the owner such rights of way or other rights as they may think proper; and the record will show that they are reserved. Such reservations may diminish his claim for damages. But no rights which are not thus reserved will exist. If they lay their pipes upon the land, they may decide how far below the surface they shall be laid ; and may vary the depth from time to time as they shall think proper ; and when they have dug their ditch for that purpose, they may decide whether or not to fill it, and make the surface smooth so that it can be used as a way. And as they cannot now foresee what their future necessities or interests may be, it is important to them to limit their rights as little as possible. Probably it is with this view that they have omitted to make any reservations."

In the case of *Inhabitants of Walpole* v. *Massa-*

10.   (1868), 100 Mass. 350.

*chusetts Chemical Co.*[11] the town of Walpole has appropriated lands to be used in connection with furnishing a water supply to the town. The Chemical Company had enjoyed an easement over the land appropriated; and in support of its holding that the appropriation extinguished the easement the Massachusetts court used the following language (p. 69) :

> "It is as if the easement were a right of way over the land where the pumping station is erected. Such a right, annexed to a neighboring estate, would be taken by a taking of the whole of the servient tenement for such a public use. An easement is an interest in the land, carved out of it for the benefit of the owner of the dominant tenement, and it leaves the owner of the servient tenement with a title limited by the ownership of this separate interest in another person. So a taking of the entire land, which describes it as if it were unincumbered, includes the easement, just as it would include a leasehold estate as well as the fee or reversion. *Commonwealth* v. *Fisher,* 6 Metc. 433; *Sprague* v. *Dorr,* 185 Mass. 10, 13, 69 N. E. 344."

In *Googins* v. *Boston, etc., R. Co.*[12] the railroad company had taken land under the provisions of a statute which authorized the railroad to take the fee. The owner of certain land brought suit to restrain the defendant corporation from obstructing an alleged right of way over its railroad. We quote the following from the opinion in the case (p. 506) :

> "There is no reason to construe the location as taking less than the statute authorizes. The language is 'do hereby . . . take the railroad property heretofore known as the Union and Grand Junction Railroad, . . . and also all land described' in a paper annexed. That paper directly, and by reference to a plan, includes the locus. It should be observed also that the width and boundaries of a large part of the location vary from the width and boundaries

11. (1906), 192 Mass. 66, 78 N. E. 140.
12. (1892), 155 Mass. 505, 30 N. E. 71.

of the earlier road. In general, when land is taken for a railroad, and no right of crossing is reserved in the location or ordered by the county commissioners, it is not subject to such a right, even if without it an owner will be cut off from access to his land. *Old Colony Railroad* v. *Miller*, 125 Mass. 1, 5. *Smith* v. *New York & New England Railroad*, 142 Mass, 21, 22. *Abbott* v. *New York & New England Railroad*, 145 Mass. 450, 460. *Boston Gas Light Co.* v. *Old Colony & Newport Railway*, 14 Allen 444. . . .. But the reason plaintiff's way is destroyed is that the defendant has the right to take land given it by the statute; that land includes easements; (Gen. Sts. c. 3, §7, cl. 10; see Pub. Sts., c. 3, §3, cl. 12;) and that, as matter of construction, when a railroad takes land and does not mention the way in its location, it does not leave outstanding a right which presumably will be inconvenient to it, and to a certain extent inconsistent with the purpose of the taking."

The decision of the Supreme Court of Kansas in the case of *Atchison, Topeka & Santa Fe Railway Company* v. *Conlon*,[13] involves a definite recognition of the rule that when a strip of land is taken in fee simple through a farm by a railroad company an easement of a right of way of crossing is destroyed. In this case it was claimed that the crossing over the railroad tracks was indispensible to the use of the farm and consistuted a way of necessity. The court said that in view of the facts it was unnecessary to dwell on this contention. The facts were as follows: In 1864 the railroad corporation had condemned a right of way 100 feet wide over and through the farm and had acquired a fee simple title to the land for its right of way. In 1870 the owner of the farm sold it to James Conlin and by mean conveyances the land passed to the defendant, Anna Conlin, in 1872. The deeds contained the following exception: "The right of way has been given to P. P. Railroad by said Baldwin." From 1873 until 1897 the

13. (1901), 62 Kan. 416, 63 Pac. 432, 53 L. R. A. 781.

owners of the farm had used the crossing and the owners of the 100 foot strip had maintained a plank crossing over the rails for the accommodation of the owner of the farm. The court said that when James Conlin acquired the land by virtue of the deed which excepted the 100 foot strip, the fee of which had been taken from his grantor by condemnation proceedings, he was in the same situation as if the grantor had made two deeds,—one to the ground on the south, and the other to the land on the north, of the right of way; and that Anna Conlin bought land situated on both sides of the railway with a fee-simple proprietor owning an estate between the two tracts at the time she took title. The court concluded that "no rule of law will permit her to assert a dominant estate, from necessity, in any part of the intervening property."

There is no suggestion in the opinion of the Supreme Court of Kansas that the exception in the deeds destroyed an easement over the 100 foot strip to which the original condemnor had acquired a fee simple title. If a way of necessity had arisen by implication when the condemnor took the strip there was nothing in the later conveyance which would have destroyed it. Consequently the decision necessarily involves the holding that when a condemnor has the right to take a fee simple under an exercise of the power of eminent domain and does take such an interest without limitation that no way of necessity is preserved for the benefit of the portion of the condemnee's land which is not taken.

The foregoing cases, and others which might be cited, recognize that when the fee is taken there is a complete severance, with the legal consequence that all interests of the condemnee in the land which is taken pass to the condemnor as a part of the appropriation; but that when the title of the land appropriated remains in the condemnee, only such interests are taken

which are expressly described or which are reasonably necessary to make effective the purpose for which the appropriation is made. For that reason it is regularly held than when a railroad corporation does not take the title to land for its right of way it does not cut off the rights of the condemnee in the land appropriated for the right of way, unless the exercise of these rights by the condemnee interfere with the condemnor's use of the right of way.

The rule just stated explains the decision of this court in *Cleveland R. Co.* v. *Smith*[14] which is strongly relied upon by appellant in the instant appeal. In this case the railroad had condemned a right of way for its railroad across a farm with the result that "the only means of communication, used in transporting farm products and machinery, between this forty-acre tract, and the tract north of the railroad, was a crossing over the railroad . . ." In assessing damages in a later condemnation proceeding it became important to decide whether the original taking in 1869 had severed the tracts of land which were separated by the right of way into separate independent tracts and whether the condemnor was entitled to any damages for the destruction of the private crossing.

This court held that the trial court did not err in refusing to give an instruction which stated that in estimating the damages the jury must consider the land north of the old right of way as a separate, independent tract, and determine the damages to it independent of its connection with the land south of the right of way. In discussing this point this court used the following language (p. 538) :

"The court did not err. The right which a railroad company acquires by the appropriation of a right of way under our statute, is a *mere easement.*

14. (1911), 177 Ind. 524, 97 N. E. 164.

*Quick* v. *Taylor* (1888), 113 Ind. 540, 16 N. E. 588; *Cincinnati, etc. R. Co.* v. *Geisel* (1889), 119 Ind. 77, 21 N. E. 470. The imposition of this easement does not, in itself, divide a farm into separate tracts. *Chicago, etc., R. Co.* v. *Huncheon* (1892), 130 Ind. 529, 30 N. E. 636. Whether the tracts north and south of the old right of way, were, at the time of the last appropriation, separate and distinct tracts, was a question of fact for the jury to determine." (Our italics.)

The foregoing was a correct statement of the law as to the effect of the appropriation of a right of way by a railroad in Indiana. And this court also pointed out that whether or not the tracts north and south of the old right of way had, by reason of subsequent use of these tracts, become two separate and independent tracts for the purpose of estimating damages to them by the second taking, was a fact to be determined by the jury. The appellant Railroad Company also asked the trial court in instruct the jury to the effect that the appellant was not entitled to any damages for the destruction of the private crossing on the assumption that the original condemnation had separated the farm into two separate and independent tracts with the consequent destruction of any right of the condemnee in the land appropriated for the right of way; and that the owners of the land had not acquired an easement by prescription. In connection with this contention this court made the following statement (p. 539) :

"Under the facts in this case, it is unnecessary to determine whether appellee was the owner of an easement in a way across the tracts by prescription, or by virtue of the crossing act of 1885, *supra.* There was, after the 1869 condemnation, no practical means of travel to or from the tract south of the railroad and west of the creek, except over appellant's right of way, and in such case, a right of way of necessity, was, by legal implication, reserved in the owner, when the original condemnation proceedings were had."

The foregoing statement by this court was sound and in accordance with decisions above referred to in this opinion. But it is not authority for the conclusion that in Indiana a way of necessity would have been preserved if the original condemnation involved in the foregoing case had resulted in the acquisition by the railroad company of a fee simple interest in the land which was appropriated for the right of way, since the result would have been the same whether the easement claimed by the condemnee is one for a way of necessity or one which at the time of the taking of the right of way was in use and was reasonably necessary for the fair enjoyment of the portion of the land which is not taken, and which is an apparently permanent and obvious servitude. The latter type of easement is the one which is recognized in *John Hancock Mutual Life Ins. Co.* v. *Patterson, supra.* It is perhaps worth noting that the foregoing case is cited and relied upon in *Cleveland R. R. Co.* v. *Smith, supra,* along with other cases, no one of which involves a way of necessity.

It is urged that the implication of a reservation of an easement of a way of necessity rests upon a public policy. It is assumed that there is a public policy which requires the implication of a way of necessity in order to prevent land thereby cut off from becoming useless. The existence of such a policy has been referred to frequently by courts in cases of voluntary grants or in cases where transfers of interests in land were effected by judicial proceedings which involved grants or their equivalent, such as sheriff deeds or reports of petition. In all such proceedings the court in reality decrees the interest which the claimant is legally entitled to have conveyed to himself by voluntary grant of another party. There is no taking by the court in the sense that the state of Indiana takes by an exercise of the power

of eminent domain. Consequently if the implication of a reservation of a way of necessity rests upon the public policy there would seem to be no reason why such policy should not be given effect in cases of transfers which are decreed in judicial proceedings. But in exercising its power of eminent domain the state is giving effect to the most fundamental public policy recognized by a political sovereign,—namely public need is paramount to any private interest. Granting that a use for which the state demands land is a public use there is no limitation upon the power to take. The constitutional requirement that compensation must be made for whatever property is taken does not limit the power to take; but it does protect property owners from confiscation of their property and makes unnecessary the implication of any reservations of interest by the property owner to prevent injustice in the exercise of the power of eminent domain. Since in the exercise of the power of eminent domain the state is giving expression to a fundamental public policy, it would seem beyond the power of a court to limit the extent of the exercise of this power by implying a specific limitation under color of giving effect to public policy. And since the individual is protected by the requirement that compensation must be made for the taking of his property, there is no basis for implications of limitations in order to protect the property owner.

While the cases refer to public policy in connection with the creation of ways of necessity it is significant that the courts assume that the foundation of the rule is the presumed intention in fact of a voluntary grantor. If the rule rested entirely upon a public policy of requiring all land to have a way of necessity to and from a public highway, such a public policy would operate in favor of land entirely surrounded by lands of strangers. The rule however has always been limited in its appli-

cation to easements in favor of the land retained by an immediate or common grantor.

At least one decision of this court has impliedly held that a way of necessity is not supported by public policy. In the case of *Logan* v. *Stogsdale*[15] this court held that an act of the General Assembly which gave any freeholder, who had no outlet to a highway, the right to petition the board of county commissioners to establish a way, was unconstitutional since it assumed to "authorize the seizure of the property of one citizen for the benefit of another." If this court had recognized the existence of a true public policy in favor of ways of necessity the Act should have been held constitutional. But the court expressly stated that "A way by necessity exists by grant, and the grant is an implied one. . . . It results from this that a way by necessity can not be successfully claimed over the land of a stranger, and if the appellant were asserting a right of way over a stranger's land she could not succeed." The court then stated that the allegations of the complaint showed that both parties claimed through a common grantor and consequently that appellee, whose land was surrounded by the land of appellant, was entitled to a way "as of necessity" across the land of appellant.

In the case of *Richey et al.* v. *Walsh*[16] the opinion of this court emphasizes the factual basis of the implication of a way of necessity. The following is quoted from the opinion in that case:

"It is settled law that if one conveys a part of his land in such form as to deprive himself of access to the remainder, unless he goes across the land sold, he has a way of necessity over the portion conveyed. This is because the law presumes an understanding of the parties that the one selling a portion of his land shall have a legal right to access over the part sold to the remainder, if he cannot reach it in any

15. (1899), 123 Ind. 372, 24 N. E. 135.
16. (1897), 149 Ind. 214, 217, 48 N. E. 1031.

other way. If the part conveyed is in such form that the grantee cannot reach the same except over the part not conveyed, such grantee has a way of necessity thereto over the land of the grantor, not conveyed, for the reason that the law presumes that one would not sell his land to another without an understanding that the grantee should have a legal right of access thereto over the part not conveyed."

We quote further from the opinion in the foregoing case, p. 219:

"The reason for the doctrine of a way of necessity is thus stated in *Collins* v. *Prentice* (15 Conn. 39, 38 Am. Dec. 61, 52) : 'And although it is called a way of necessity, yet in strictness, the necessity does not create the way, but merely furnishes evidence as to the real intentions of the parties. For the law will not presume, that it was the intention of the parties, that one should convey land to the other, in such a manner that the grantee could derive no benefit from the conveyance; nor that he should so convey a portion as to deprive himself of the enjoyment of the remainder.' The reasons given to support a way of necessity, in case of a grant, support such a rule with equal force, when there is partition of land by deed or by a proceeding in court."

In the case of *Stewart* v. *Hartman*[17] this court quoted definitions of "way of necessity" from different authorities and upon the authority of these definitions made the following statement:

"There cannot legally exist a general way of necessity without reference to the manner whereby the land over which the way is claimed because charged with the burden. In the case under consideration, it is not shown, that either of the parties, or any one under whom they or either of them claims, was ever seized of both tracts of land; and consequently the claim set up by appellant to a way of necessity can have no valid foundation."

From the various expressions of this court we must

17. (1874), 46 Ind. 331, p. 342.

conclude that a court cannot declare the existence of a way of necessity unless there has been a voluntary grant or unless the facts and circumstances are such that they are equivalent in law to a grant; and in the latter case our courts have declared the existence of a way of necessity only when equity and justice for the one claiming it requires it to be declared. No case has been passed upon by this court in which a way of necessity has been declared in favor of the owner of land when a severance in fee simple of part of his land has been effected by the exercise of the power of eminent domain of the State of Indiana. The essential element of such an implication is lacking, namely the element of freedom of the owner to withhold consent to the alienation of the land appropriated.

After detailed discussion of the grounds for the implication of a way of necessity the annotator of Corpus Juris reaches the following conclusion:[18]

> "The presumption of law is that it was not the intention of the parties that one should convey land to the other in such a way that the grantee could derive no benefit from the conveyance, nor that the vendor should so convey a portion as to deprive himself of the enjoyment of the remainder. However, the presumption that a way of necessity is created by a conveyance under the circumstances under consideration is one of fact, and whether or not the grant is to be implied in a given case depends upon the terms of the deed, and the facts in that case."

And the annotator further suggests that among the special facts to be considered is the fact that the grantor may exercise the right of eminent domain and the fact that part of the estate is taken for public purposes. In connection with the latter the following note is appended:[19]

18. 19 C. J. p. 924.
19. *Ibid.*, p. 925, note 17.

"Where a portion of an estate is taken for public purposes, no way by necessity over the portion taken arises in favor of the part remaining, since the taking is by virtue of a power whose exercise has but one limitation, that compensation should be made for the value of what is taken and for the injury to all that remains (*Prowattain* v. *Philadelphia*, 17 Phila. (Pa.) 158; *Tracy* v. *Atherton*, 35 Vt. 52, 82 Am. D. 621), and for the further reason that there has been no grant from which it could be implied (*Banks* v. *School Directors*, 194 Ill. 247, 62 N. E. 604). Where a grantor in a deed excepted from the land conveyed a strip one hundred feet wide through it, theretofore taken by a railroad company under condemnation proceedings under a statute by which the railroad obtained title in fee, it was held that the grantee was not entitled to a way of necessity from one part of the land to another divided by the strip so condemned. *Atchison etc. R. Co.* v. *Condon*, 62 Kan. 416, 63 P. 432, 53 L. R. A. 781."

We have already discussed the cases of *Prowattain* v. *Philadelphia* and *Atchison* v. *Condon*. The case of *Banks* v. *School Directors* cited in the note in *Corpus Juris*, definitely states the rule that there can be no implication of an implied way of necessity in the case of taking of land under the power of eminent domain, because there is no grant upon which any such implication can be based. In that case a proceeding was instituted to condemn a certain portion of land 12.7 rods square which was near the center of an inclosed pasture. The petition did not ask for a right of way or specify any way or proposed way to the tract of land condemned, but simply asked for condemnation of the tract as described. In the trial before a jury for damages the jury returned the verdict for $75.00 for the value of the tract of land and $100.00 for damages to the remaining land. The trial court entered judgment that upon payment of the compensation so ascertained the petitioners should have a right to enter upon the tract and the use

of the same as a school house site. Upon appeal to the Supreme Court of Illinois the latter court held that the judgment of the lower court was erroneous in attempting to give petitioners a right of way since petitioners had not asked for a right of way, and for the further reason that the cross petition of the defendant, owner of the land in question, had excluded any damages for a right of way to the tract and none had been assessed. The condemnors insisted upon appeal that having acquired the tract of land they would have a way by necessity to it from the public highway. We quote the following from the Supreme Court's discussion of this contention (p. 249) :

> "The rules under which a way by necessity arises and is presumed to have been granted cannot be applied to this case, and no such way would be acquired by condemning the tract. When anything is granted all the means to attain it are granted with it, and pass inclusive with the grant of the thing itself. So if one grants a piece of land in the midst of his own he thereby impliedly grants a way to reach it, and the grantee may cross the grantor's land for that purpose without trespass. · (Sheppard's Touchstone, 96.) In such a case the way itself is granted by the owner, and the rule is stated in 2 Blackstone's Commentaries, 35, note, as follows: (Here the court quotes from Blackstone's and Kent's Commentaries) The principle of law cannot be applied here, because there is no grant of the thing and no implication that a way was an incident to be included with it. It is proposed to take defendant's land by compulsory means, not including any right of way, and having obtained the tract, claim the way from necessity. The court could not authorize petitioners to enter into possession by going across land where they had no right to go, where they had not condemned or attempted to condem any right of way, and neither could the officer of the court put them into possession without a trespass."

The foregoing Illinois case is an especially strong

authority for the proposition that in cases of taking by eminent domain there is no implication of a way of necessity since the one claiming the way of necessity was the condemnor and would stand in the place of the grantee, if we should follow the analogy of a voluntary grant; and the cases from the very earliest time have uniformly held that a grantee who has received a grant of land which is entirely surrounded by lands of his grantor has a way of necessity.

In view of the foregoing the conclusion seems irresistible that when the state of Indiana by its declaration of appropriation and by its complaint demanded all right, title and interest of the owners of the land specifically described in the declaration of appropriation and in the complaint, and invoked the jurisdiction of the Monroe Circuit Court to declare that such appropriation had been effected, and obtained a decree of the court to that effect, that no outstanding interest in the land was left in favor of the remaining land belonging to the condemnee, Minnie Orcutt. The trial court did not err in directing the jury to assess as a part of the damages the injury to her remaining land which resulted from the destruction of her way across the intervening land to the public highway.

In my opinion appellee's petition for rehearing should be granted and the judgment of the Monroe Circuit Court affirmed.

Hughes, J., concurs.